**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andrew JORDAN, Defendant–Appellant.**

No. 88–2046.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1988.
Decided March 22, 1989.

Michael G. Logan, Chicago, Ill., for defendant-appellant.

Chris C. Gair, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr., RIPPLE, and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Andrew Jordan appeals his federal conviction for possession of a firearm by a career criminal in violation of 18 U.S.C. App. § 1202(a)(1). He claims that the federal prosecution violated the constitutional prohibitions against double jeopardy and *ex post facto* punishment. He also argues that the indictment was defective because it failed to include three prior robbery convictions as a necessary element of the federal offense. Finally Jordan appeals the trial court's denial of his pre-trial motion to exclude from evidence a guilty plea he entered in state court. He argues that the state plea was involuntary, unintelligent, and therefore inadmissible because the state failed to advise him that the plea could be used against him in a federal prosecution. We affirm.

## I. FACTUAL BACKGROUND

On March 17, 1986, Jordan pleaded guilty in state court to attempted murder. In exchange for his plea, the State's Attorney dismissed related charges of armed violence and unlawful use of a weapon and agreed to recommend the minimum statutory term of six years imprisonment. As initially charged, Jordan could have been sentenced to a maximum term of 30 years imprisonment upon conviction.

Before accepting Jordan's plea, the state judge asked to hear the factual basis for the plea. The State's Attorney responded that if the case were to be tried he would call Officer Martin, a Chicago police officer, who would testify that on April 12, 1985, he was off duty and working as a security guard at a grocery store. According to Martin, a woman entered the store and informed him that there was a man with a gun outside. Martin departed from the store with his gun drawn and observed Jordan with a revolver in his hand standing next to another man. Martin approached and advised Jordan that he was a police officer. Jordan fired at Martin, who returned fire and wounded Jordan. Martin would testify that he recovered a nickel-plated revolver from Jordan.

The state judge advised Jordan of the charges against him, the possible sentence, his right not to plead guilty, his right to a jury trial, the State's burden of proving its case beyond a reasonable doubt, and the effect of a guilty plea. In all instances, Jordan acknowledged his understanding. Finally, the judge asked Jordan if any other promises or any threats had been made to him and whether he had personally made the decision to plead guilty after discussing the case with his lawyer. Jordan stated that no other promises and no threats had been made to him and that he had discussed the case with his attorney. Jordan then pleaded guilty to attempted murder.

Without notifying Jordan, on October 7, 1985, six months prior to the entry of the plea agreement, the State's Attorney notified the Bureau of Alcohol, Tobacco, and Firearms (ATF) of Jordan's arrest and record. Because Jordan had been convicted thrice previously of robbery, the State's Attorney stated that ATF should consider prosecuting Jordan for possession of a firearm by a career criminal.

On November 5, 1987, a federal grand jury indicted Jordan for possession of a firearm by a felon in violation of 18 U.S.C. App. § 1202(a)(1). Jordan moved to suppress evidence of his state guilty plea, arguing that it was involuntary and unintelligent. The federal judge denied Jordan's motion to suppress the plea. The government then presented its case to the jury. It called five witnesses—Officer Martin, two uniformed Chicago policemen who investigated the incident, a Federal Bureau of Investigation (FBI) fingerprint expert, and the woman who initially informed Officer Martin that there was a man with a gun on the street. The government also introduced physical evidence, including the firearm allegedly possessed by Jordan, and documentary evidence, including Jordan's guilty plea. The defense entered several stipulations—additional excerpts from the state court transcript relating to the circumstances surrounding entry of the guilty plea and medical evidence relating to the path of entry and travel of the bullets which struck Jordan. The jury found Jordan guilty as charged and the judge sentenced Jordan to 20 years imprisonment. Jordan moved for post-conviction relief and argued that the indictment was defective because it failed to list three prior robberies, which he viewed as statutory elements of the federal crime. The judge denied the post-conviction motion in arrest of judgment. Jordan filed a notice of appeal. He appeals his federal conviction and the trial judge's denial of his pre-trial and post-conviction motions.

## II. DISCUSSION

### A. *Double Jeopardy*

■ Jordan claims that a federal prosecution based on a prior conviction in state court violates the double jeopardy clause of the fifth amendment. The double jeopardy clause is intended to protect the accused from multiple prosecution for the same crime. The double jeopardy clause of the fifth amendment, however, bars successive prosecutions "only if the two offenses ́for which the defendant is prosecuted are the 'same.'" *Heath v. Alabama,* 474 U.S. 82,

87, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985). The Supreme Court "has plainly and repeatedly stated that two identical offenses are not the 'same offence' within the meaning of the double jeopardy clause if they are prosecuted by different sovereigns." *Id.* at 92, 106 S.Ct. at 439. In *Heath v. Alabama,* the Supreme Court explained how this principle of dual sovereignty relates to the double jeopardy clause:

> The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences." ... Consequently, when the same act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable."

474 U.S. at 88, 106 S.Ct. at 437 (citations omitted). *See also United States v. Schwartz,* 787 F.2d 257, 266 (7th Cir.1986). This doctrine has been applied to dual prosecution in state and federal courts on other occasions. *See, e.g., Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed. 2d 729 (1959) (upholding federal conviction subsequent to state conviction for the same conduct); *United States v. Jones,* 808 F.2d 561, 565 (7th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987) (upholding federal conviction subsequent to state acquittal on charges arising from the same actions).

Jordan acknowledges the "dual sovereignty doctrine," but argues that the government's conduct fits an exception to the general rule. He argues that the State's Attorney had a weak case but wanted Jordan to get a stiff sentence. The State's Attorney, therefore, induced Jordan to plead guilty by agreeing to a six year term of imprisonment because the State's Attorney knew the federal government could use the guilty plea in federal court

and obtain a minimum 15–year sentence. Jordan argues that the State used the federal prosecutor as a "tool" and that the federal prosecution was a "sham or cover" for a second state prosecution. *See Bartkus v. Illinois*, 359 U.S. 121, 123–24, 79 S.Ct. 676, 678–79, 3 L.Ed.2d 684 (1959). This court has recognized the so-called "*Bartkus* exceptions." *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). We noted, however, that these exceptions do not prohibit the use of common witnesses in both trials and that "cooperation between state and federal authorities is a welcome innovation." *Aleman*, 609 F.2d at 309. *See also United States v. Bernhardt*, 831 F.2d 181 (9th Cir.1987) (federal prosecution following dismissal of state charges on statute of limitation grounds not necessarily a sham even though deputy state attorney was responsible for both prosecutions and the state paid for both prosecutions); *United States v. Padilla*, 589 F.2d 481 (10th Cir.1978) (no error to allow federal prosecutor, who had been county prosecutor when the state charges were disposed of by a plea agreement, to prosecute federal case against same defendant, or to allow sole witness from the state trial to testify during the federal trial).

The record shows that Jordan's claim does not come within the "*Bartkus* exceptions." The State's Attorney notified the federal authorities that Jordan had been arrested for attempted murder and possession of a firearm and that he had been convicted of robbery three times. The State's Attorney stated that federal authorities should consider prosecuting Jordan for a violation of 18 U.S.C.App. § 1202(a)(1). The federal prosecutor, after deciding to prosecute Jordan, used evidence and witnesses that had been uncovered by state authorities. There is no evidence, however, to show that the State controlled the federal prosecution. It would have been difficult for the federal prosecutor to prove the federal offense without some overlap in evidence. The weapon used in committing the state offense, attempted murder, was necessary to establish the fac-

tual predicate for one of the elements of the federal offense, possession of a firearm. The dual sovereignty doctrine renders this overlap constitutional. Without evidence that the federal prosecution was a tool or sham for double prosecution by state officials, the *Bartkus* exceptions do not apply.

The possibility of subsequent federal prosecution was entirely speculative at the time Jordan pleaded guilty. After the State's Attorney notified ATF, ATF conducted an independent investigation. At the conclusion of its investigation, ATF referred the case to the United States Attorney for possible prosecution. The United States Attorney conducted his own investigation before he decided to prosecute. A grand jury then investigated the charges before handing down an indictment. There is no evidence to indicate that any state official knew, when Jordan pleaded guilty, that any of these subsequent federal actions would occur. In short, Jordan's claim that the federal authorities were used as a "tool" by the State or that the federal prosecution was a "sham or cover" for a second state prosecution is without factual support. The record shows nothing more than commendable cooperation between state and federal law enforcement officials.

### B. Due Process

■ In addition to his double jeopardy challenge, Jordan argues that the federal prosecution deprived him of due process of law. In support of this proposition, he cites *United States v. American Honda Motor Company*, 273 F.Supp. 810 (N.D.Ill. 1967). In *American Honda*, the defendant was a national corporation that had previously been indicted by a federal court in Los Angeles, California, for conspiring to fix prices. *American Honda*, 273 F.Supp. at 819. After American Honda produced over 6,000 pages of documents for the grand jury in Los Angeles, grand juries in San Francisco, Columbus, and Chicago demanded substantially identical documents. The Chicago judge found that these multiple investigations, which led to separate indictments for the same conduct, were

fundamentally unfair and violative of due process. He dismissed the local indictment. *Id.*

Unlike *American Honda,* Jordan's federal prosecution does not involve multiple investigations or multiple indictments by the same sovereign for the same conduct. Instead, two separate sovereigns investigated, prosecuted, and convicted Jordan for two separate crimes. Unlike *American Honda,* Jordan was not placed in a situation so fundamentally unfair that he was deprived of due process of law. *Cf. United States v. DeMichael,* 692 F.2d 1059 (7th Cir.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983) (prosecutorial discretion allows federal prosecutor to await final disposition of similar state prosecution before dropping charges or proceeding with federal prosecution).

*C. Ex Post Facto*

■ A law violates the *ex post facto* clause when it is applied retrospectively; that is, it "changes the legal consequences of acts completed before its effective date;" and it disadvantages "the offender affected by it." *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29 & 31, 101 S.Ct. 960, 964 & 965, 67 L.Ed.2d 17 (1981)). Jordan argues that the Armed Career Criminal Act of 1984 (ACCA or "the Act") violates this prohibition because it increases the penalty for crimes committed before the effective date of the Act.

The federal government charged Jordan for violating 18 U.S.C.App. § 1202(a)(1),[1] which applies to felons in possession of firearms that have traveled in or affected interstate commerce. The federal prosecutor had to establish three elements to prove this crime: (1) Jordan was a felon, (2) Jordan possessed a firearm, and (3) the firearm had traveled in or affected interstate commerce. 18 U.S.C.App. § 1202(a)(1). Jordan violated this statute after it became law. The law went into effect in 1968. Jordan violated this law on April 15, 1985. *See United States v. Sutton,* 521 F.2d 1385, 1390–91 (7th Cir.1975) (§ 1202 punishes felons in possession of a firearm after the effective date of the Act). The court enhanced Jordan's sentence for this crime, however, based on convictions entered prior to the effective date of the Act. Section 1202(a)(1)'s enhancement provision mandates a minimum 15–year term of imprisonment when the offender has been convicted thrice previously of robbery or burglary. Jordan's prior robbery convictions occurred on May 22, 1972 (two convictions), and June

---

1. This court summarized the history of 18 U.S.C. App. § 1202(a)(1) in *United States v. Karlin:*

 18 U.S.C.App. § 1202(a)(1) was originally enacted as part of Title VII, Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, effective June 19, 1968. It provided:
 (a) Any person who—
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

 \* \* \* \* \* \*

 and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
 [The Armed Career Criminal Act of 1984 ("ACCA") ], ... effective October 12, 1984, added at the end of § 1202(a) the following language:
 In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three prior convictions by any court referred to in

paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.
*United States v. Karlin,* 852 F.2d 968, 969 n. 1 (7th Cir.1988) (quoting § 1202(a), Pub.L. No. 90–351, effective June 19, 1968, as amended by Pub.L. No. 98–473, effective October 12, 1984).

 At the time of Jordan's offense, the statute was in this form. It was repealed effective 180 days after May 19, 1986. The substantive crime was then incorporated into 18 U.S.C. § 922 while the enhancement provision was incorporated into § 924 by the Firearms Owner's Protection Act, Pub.L. No. 99–308, §§ 102(6), 104(a)(4). *See United States v. Dickerson,* 857 F.2d 414, 416 n. 5 (7th Cir.1988).

16, 1970. Section 1202(a)(1)'s enhancement provision did not become law until 1984.

This Act does *not* "make[ ] more onerous the punishment for crimes committed before its enactment." *Weaver,* 450 U.S. at 36. Jordan is being punished because he violated 18 U.S.C.App. § 1202(a)(1). He was a felon in possession of a firearm that traveled in or affected interstate commerce, on April 15, 1985. The enhancement provision, enacted in 1984, increases the punishment for *this* crime. It does not affect the punishment previously meted out to Jordan for the three robberies he committed prior to the effective date of the Act. *See United States v. Lowe,* 860 F.2d 1370 (7th Cir.1988) (similar provision in binding successor statute to § 1202(a)(1) a sentence enhancement provision). *See also United States v. Dickerson,* 857 F.2d 414 (7th Cir.1988); *United States v. Karlin,* 852 F.2d 968 (7th Cir.1988); *United States v. Pirovolos,* 844 F.2d 415 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

Commenting on similar enhancement provisions, the Supreme Court has said: "The sentence as a ... habitual criminal is not to be viewed as ... additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948). Comparing ACCA's enhancement provision to habitual criminal or recidivist statutes, this court has stated:

> In fact, the only perceptible difference between [§ 1202(a)(1) ] and a more traditional recidivist statute is Congress' conclusion that a certain class of repeat felons should be subject to an enhanced sentence when they commit the prohibited act of ... possessing a firearm, rather than the same underlying offense or offenses. Significantly, the legislative history of the ACCA reveals that the difference was intended and is a function of Congress' aim of subjecting "career criminals"—that small number of repeat offenders responsible for an inordinate percentage of the nation's 25 million crimes of theft and violence—to federal

prosecution without radically expanding federal jurisdiction over common law crimes.

*United States v. Lowe,* 860 F.2d at 1377. Jordan's three prior felonies were used to enhance his punishment for a crime committed after the Act became law. The § 1202(a)(1) enhancement provision operates prospectively, not retrospectively. It is not an *ex post facto* law. *United States v. Karlin,* 852 F.2d 968, 973–74 (7th Cir. 1988).

### D. Defective Indictment

■ Jordan argues that the grand jury indictment was defective because it failed to list his three prior felonies, which he viewed as statutory elements of the offense. He claims that the trial judge, therefore, erred when he denied Jordan's post-trial motion in arrest of judgment. As we discussed in our earlier *ex post facto* analysis, the three prior felonies are not elements of the substantive crime. They are relevant to sentencing only and, because of their prejudicial effect, should *not* be listed in the indictment. *See United States v. Lowe,* 860 F.2d at 1382 n. 12 (7th Cir.1988); *United States v. Karlin,* 852 F.2d 968, 972 (7th Cir.1988); *United States v. Pirovolos,* 844 F.2d 415 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). The trial court properly denied Jordan's post-trial motion.

### E. Admissibility of Guilty Plea

Jordan claims that the trial judge erred when he denied the pre-trial motion to suppress the state guilty plea. In support of this claim, Jordan offers three arguments: (1) prosecutorial misconduct violated the due process clause and rendered his plea involuntary under the fifth amendment; (2) Jordan's lack of knowledge about possible federal prosecution rendered his guilty plea involuntary and unintelligent under the fifth amendment; and (3) defense counsel's failure, at the state level, to advise Jordan of possible federal prosecution denied Jordan effective assistance of counsel under the sixth amendment.

### 1. Prosecutorial Conduct

■ Prosecutorial misconduct raises due process and fifth amendment concerns. A prosecutor offends due process when he breaches a plea agreement. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Jordan argues that his plea incorporated an implied promise not to subject him to additional prosecution. He argues that the State's Attorney broke this promise when the federal government prosecuted Jordan. Likewise, the government violates the fifth amendment when it compels a defendant to incriminate himself. *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Jordan does not assert that the prosecutors used threats to compel his plea. *See Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed. 2d 747 (1970). Rather, he asserts that the prosecutors induced his plea with a material misrepresentation—nondisclosure of the ATF notification and the possibility of subsequent federal prosecution.

■ Jordan cites *Santobello v. New York* and *Murphy v. Waterfront Commission* as support for his argument of prosecutorial misconduct. In *Santobello,* the defendant pleaded guilty and the prosecutor who negotiated the plea agreement agreed to make no sentence recommendation. Another prosecutor was later substituted into the case and, unaware of this agreement, recommended a sentence. The Supreme Court imputed the knowledge of one prosecutor to the other, found that the recommendation was a breach of the agreement, and invalidated the plea. *Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 498–99.

In *Murphy,* the State granted the defendants immunity from state prosecution and compelled their attendance at a grand jury. When the defendants refused to answer questions on the grounds that their answers might subject them to federal prosecution, the State found them in contempt. The Supreme Court reversed and held that one sovereign could not *compel* testimony which might subject the witness to prosecution by another sovereign. *Murphy,* 378 U.S. at 79, 84 S.Ct. at 1609.

Unlike the prosecutors in *Santobello,* the state prosecutors here did not promise Jordan anything regarding federal prosecution or the use of his state guilty plea in federal court. Unlike the prosecutors in *Murphy,* the State's Attorney here did not demand that Jordan relinquish a constitutional right.

In failing to advise Jordan of the possibility of federal prosecution, the State made no explicit promise or misrepresentation to Jordan. The issue was not misrepresented because it was not represented at all. *Cf. United States ex rel. Robinson v. Israel,* 603 F.2d 635, 637–38 (7th Cir.1979) (*en banc*), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980) (no breach of plea when judge and prosecutor sent post-conviction letter to parole board advocating maximum incarceration under sentence imposed and plea did not address parole eligibility). Neither *Santobello* nor *Murphy* place an affirmative duty on the prosecution to discuss all possible ramifications of a defendant's guilty plea. Rather, they prohibit false representations and mandate compliance with promises made. Jordan's argument does not raise either of those concerns.

### 2. Voluntary Plea

■ In addition to his claim of prosecutorial misconduct, Jordan argues that evidence of the guilty plea was inadmissible because the fifth and fourteenth amendments require that guilty pleas entered in state court be intelligent and voluntary. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea is voluntary when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady,* 397 U.S. at 755, 90 S.Ct. at 1472. A guilty plea is intelligent and knowing when the defendant is competent, aware of the charges, and advised by competent counsel. *Brady,* 397 U.S. at 756, 90 S.Ct. at 1473. We have already determined that the State's Attorney did not induce Jordan's plea through threats or affirmative misrepresentations. Therefore, to assess the voluntary nature

of the plea, we need only determine whether the possibility of federal prosecution was a direct consequence of the guilty plea. We will then address Jordan's claim of ineffective assistance of counsel as we analyze the intelligent nature of his plea.

■ Jordan's claim is similar to the claim we rejected in *United States v. Long*, 852 F.2d 975 (7th Cir.1988). Jordan attempts to distinguish *Long* and, alternatively, to challenge that recent decision, but we find *Long*'s reasoning persuasive. In *Long*, the defendant committed several burglaries in adjoining counties. *Long*, 852 F.2d at 976. He agreed to cooperate with one county prosecutor in exchange for an agreement that he would obtain a sentence identical in length to the sentence received in the adjoining county. *Id.* The agreement provided for concurrent sentences. *Id.* Long then confessed to several burglaries and admitted taking a gun during one of the crimes. *Id.* Without the county prosecutor's knowledge, federal authorities used this confession to prosecute Long for a violation of 18 U.S.C.App. § 1202(a)(1). *Id.* We affirmed the use of Long's confession on two alternative grounds. *Long*, 852 F.2d at 976, 979. First, we examined the confession and found that it was voluntary. *Long*, 852 F.2d at 977–79. Second, we analyzed it as the equivalent of a plea agreement and found that it was both voluntary and intelligent. *Long*, 852 F.2d at 979–80.

Because Jordan entered a plea, we look to the second rationale. As we stated in *Long*, a defendant enters a plea agreement voluntarily if he is aware of the direct consequences of his plea. We found in *Long* that the possibility of federal prosecution was not a direct consequence of the plea. *Long*, 852 F.2d at 979. Unlike the prosecutor in *Long*, however, the State's Attorney knew that the federal government could prosecute Jordan when he negotiated the plea agreement with Jordan. Now we must determine whether the *knowing* failure to disclose such information was a direct consequence of the plea.

Direct consequences are the "immediate, and automatic consequences" of the guilty plea. *See United States v. Suter*, 755 F.2d 523, 525 (7th Cir.), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985) (no requirement for court to advise defendant of range of civil penalties and judgments he might face as a result of a guilty plea to criminal charge). Consequences that are not direct are collateral and have "no effect whatsoever upon the length or nature of the ... sentence." *United States v. Long*, 852 F.2d at 979 (quoting *United States v. Ray*, 828 F.2d 399, 418 (7th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988)).

Although the State's Attorney in Jordan's case was aware of the possibility of federal prosecution and advised ATF that Jordan might be eligible for prosecution, federal prosecution was only a possibility, over which the State's Attorney had no control, when Jordan pleaded guilty in state court. We addressed a comparable situation in *United States ex rel. Robinson v. Israel*, 603 F.2d 635 (7th Cir.1979) (*en banc*), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980). In *Robinson*, we found that a letter sent by the judge and prosecutor to the parole board, recommending the maximum period of incarceration possible for the sentence reached through plea bargaining, was a collateral consequence because it was not binding on the parole board. *Id.* Likewise, the State's Attorney's notification to the ATF was nonbinding on the ATF and the federal prosecutor. Nothing required the federal government to prosecute Jordan. The federal government had to investigate the allegation, determine that sufficient evidence existed to support a prosecution, and exercise its prosecutorial discretion. The federal prosecution was not "automatic." *Suter*, 755 F.2d at 525. Furthermore, unlike the defendant in *Long* who confessed without the protection of counsel, Jordan pleaded guilty in open court with the assistance of counsel.

Jordan claims nevertheless that this court has suggested that the use of a guilty plea would be unconstitutional in these circumstances. Jordan's reliance on *dicta* in *United States v. Howze*, 668 F.2d

322 (7th Cir.1982), is misplaced. In *Howze*, we stated:

> If a defendant was not informed that the guilty plea could be subsequently used against him he may have lost the right to confront witnesses at a second trial and, arguably, this is not an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). We are not suggesting that the guilty plea at the first trial was not voluntary and therefore invalid. We simply note, *without expressing any opinion as to the outcome*, that there may be a problem of constitutional dimension created by using a valid guilty plea at a collateral criminal proceeding to prove an element of the crime charged. *We do not now decide this issue because it was not raised in the lower court.*

*United States v. Howze*, 668 F.2d at 324 n. 3 (emphasis added). We declined in *Howze* to address the issue presented today but suggested our response in *Long*: "[w]e will not fashion a rule that requires state officials to ascertain and inform state defendants of potential federal criminal charges as a prerequisite to the government using state-negotiated statements in a subsequent federal prosecution." *Long*, 852 F.2d at 980. Today we squarely face the issue, adopt *Long's* conclusion, and apply *Long's* reasoning to encompass the facts before us.[2]

### 3. Intelligent Plea and Effective Assistance of Counsel

 In order for Jordan's plea to satisfy the fifth amendment, it must also have been intelligent. *See Boykin*, 395 U.S. at 244, 89 S.Ct. at 1713. Jordan does not challenge his own competence or his awareness of the charges against him. We therefore confine our analysis to the competency of defense counsel in the state proceeding. *See Brady*, 397 U.S. at 756, 90 S.Ct. at 1473. Jordan's sixth amendment claim of ineffective assistance of counsel is subsumed by this analysis. *See Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985). The guilty plea will stand unless (1) counsel's performance fell below an objective level of reasonable conduct and (2) the defendant would not have pleaded guilty but for counsel's incompetence. *Hill*, 474 U.S. at 59, 106 S.Ct. at 371; *Key v. United States*, 806 F.2d 133, 138 (7th Cir.1986). Defendant must overcome a strong presumption that his counsel met an objective level of competence. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed. 2d 674 (1984).

Jordan contends that defense counsel failed to inform him that he could be prosecuted in federal court and his guilty plea could be used against him. Even if we were to assume that his state counsel should have advised him of possible federal consequences Jordan offers no evidence, only bare allegations, that counsel failed to advise him of these possibilities. In order to establish that his counsel failed to inform him of the possibility of federal prosecution, Jordan must provide some proof of his claim. *See, e.g., United States ex rel. Healey v. Cannon*, 553 F.2d 1052, 1055 (7th Cir.), *cert. denied*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977) (defendant supported his allegation with statements from his father, who witnessed the misinformation, and his attorney, who admitted to giving erroneous advice).[3] In *Long* the

---

**2.** Jordan also cites *United States v. Edwards*, 669 F.Supp. 168 (S.D.Ohio 1987) (finding prior state court plea inadmissible in federal prosecution because defendant was not advised that state court admissions could be used in federal court), in support of his argument. We do not find it persuasive.

**3.** Because there is no evidence that Jordan's counsel failed to inform him of the possibility of federal prosecution, we need not determine whether counsel's performance was "within the competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Likewise, because Jordan has not established that his counsel knew of the possibility of federal prosecution, we need not determine whether counsel's failure to request a stipulated bench trial rendered his representation of Jordan ineffective. Even if Jordan had substantiated his allegations, it is not clear that counsel's performance was incompetent. This is not a case where counsel actively misrepresented the col-

disclosure of the gun came only after Long had entered a plea agreement with county authorities, but in this case evidence of Jordan's possession of a gun did not depend on his state guilty plea. The gun evidence was independently available to state and federal authorities.

Alternatively, Jordan's claim of ineffective assistance of counsel fails to show that he would not have pleaded guilty but for counsel's alleged incompetence. *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 371. The plea must be evaluated by considering the totality of circumstances surrounding it. *Brady,* 397 U.S. at 749, 90 S.Ct. at 1469; *United States ex rel. Healey v. Cannon,* 553 F.2d at 1059 (Wood, Jr., J., dissenting). In exchange for Jordan's guilty plea, the State dismissed two related charges and recommended the minimum statutory sentence. Despite these obvious benefits, Jordan now contends that he would have gone to trial because the State's case was weak. We disagree. Officer Martin was prepared to testify in state court. In addition, the State's Attorney had Jordan's weapon. Finally, the federal prosecution incorporated collaborating witness and expert testimony. In view of the evidence available to the State, we find Jordan's claim without merit. There was no prejudice. *See, e.g., Gargano v. United States,* 852 F.2d 886 (7th Cir.1988); *Key v. United States,* 806 F.2d 133 (7th Cir.1986).

In summary, Jordan's ineffective assistance claim fails because he did not overcome the presumption of competence or demonstrate prejudice. His guilty plea was intelligently entered. Coupling this conclusion with our earlier findings regarding the lack of prosecutorial misconduct and the voluntary nature of the plea, we hold that Jordan's state plea was properly admitted as evidence in his federal trial.

We have fully considered Jordan's arguments, but the state guilty plea, even if viewed as constitutionally defective, which

lateral consequences of a plea, *see United States ex rel. Healey v. Cannon,* 553 F.2d 1052 (7th Cir.), *cert. denied,* 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977); *People v. Correa,* 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985), or a case where counsel *knew* of the collateral conse-

it was not, is immaterial to his federal conviction. In his federal trial, an eyewitness testified that Jordan was in possession of a gun. Nothing more was needed.

For the reasons stated in this opinion, the judgment of the district court is AFFIRMED.

quence but did not inform the defendant until the plea had been entered, *see United States v. George,* 869 F.2d 333 (7th Cir.1989). Instead, it is a case where counsel's alleged error was an unknowing omission or passive misconduct.