42 F.3d 1389
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Jimmy ODOM, Defendant-Appellant.
 No. 93-2526.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1994.
 
 Before: LIVELY, JONES, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Jimmy Odom appeals his conviction and sentence as a felon in possession of a firearm and ammunition. For the reasons stated herein, we AFFIRM the decision of the district court.
 
 I.
 
 2
 On January 9, 1992, Odom, pursuant to a plea agreement with state authorities, pled guilty in Michigan state court to carrying a concealed weapon in violation of Michigan law. Pursuant to the same plea agreement, the state authorities did not charge Odom as a habitual offender. Odom was sentenced to a one-to-five-year state prison term.
 
 
 3
 In the fall of 1991, the Federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") was creating a computer database of parolees with three or more violent felonies on their criminal record. ATF was targeting persons on this list for prosecution as armed career criminals under the Armed Career Criminal Act ("ACCA"), codified in relevant part at 18 U.S.C. Sec. 924(e) (1988), should they be found in possession of a firearm. In September 1991, ATF Agent Mark Ratliff determined that Odom appeared to fit this profile. He contacted Odom's parole officer and verified Odom's criminal record. In the last week of January 1992, an unidentified state presentence investigator telephoned Ratliff and informed him that Odom had pled guilty to carrying a concealed weapon, and was due to be sentenced. Ratliff then called a parole officer, who verified this information. Ratliff further investigated by interviewing other Detroit police officers involved in the case, by contacting the Wayne County prosecutor's office, and by interviewing Odom's personal parole officer. On April 30, 1992, Ratliff presented his final investigation report regarding Odom's possible federal firearms prosecution to the United States Attorney's office.
 
 
 4
 On June 26, 1992 a complaint charging Odom as a felon in possession of a firearm issued, and on October 7, 1992, a grand jury in the Eastern District of Michigan charged Odom in a one-count indictment as a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g) (1988).
 
 
 5
 On January 29, 1993, Odom filed a motion to quash the indictment, or, in the alternative, to suppress evidence of his guilty plea in state court relating to the same conduct at issue in this federal prosecution. The government responded to Odom's motion, and filed a notice that it intended to seek enhanced sentencing under the ACCA. On March 31, 1993, the district court held a hearing on Odom's motion, and it denied the motion, finding that the federal prosecution had resulted from independent investigation, that the state prosecutor had no control over whether a federal prosecution would follow, and that the federal government was not a party to the state plea agreement.
 
 
 6
 After this hearing, Odom entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11, in which he pled guilty to one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, and the government agreed not to pursue enhanced sentencing under the ACCA. On November 16, 1993, Odom was sentenced to a 120-month sentence for each count, and these sentences were to run concurrently with each other and the state sentence he was still serving. This appeal followed.
 
 II.
 
 7
 Because the due process issues Odom raises are issues of law, this court reviews them de novo. United States v. Allen, 954 F.2d 1160, 1165 (6th Cir.1992). This court will not disturb the district court's findings of fact unless they are clearly erroneous. United States v. Lassiter, 929 F.2d 267, 270 (6th Cir.1991).
 
 III.
 
 8
 Odom first argues that the state authorities' agreement not to enhance his sentencing was fundamentally unfair, and thus violative of his due process rights, because they knew, and Odom did not know, that Odom could receive enhanced penalties for the same conduct through a federal prosecution. Furthermore, he argues, not only did the state authorities know of this possibility of federal prosecution, but they actually "triggered" the federal prosecution.[1] Odom Br. at 9. Odom argues that this interaction between state and federal authorities resulting in his federal prosecution clearly violated his due process rights. We disagree.
 
 
 9
 In United States v. Jordan, 870 F.2d 1310 (7th Cir.), cert. denied, 493 U.S. 831 (1989), a case that is highly similar to the instant case, the Seventh Circuit held that where "two separate sovereigns investigated, prosecuted, and convicted [the defendant] for two separate crimes ... [he] was not placed in a situation so fundamentally unfair that he was deprived of due process of law." 870 F.2d at 1314.[2] This court has held that a defendant's due process rights are not violated when state authorities referred his case to federal authorities for prosecution "as long as prosecutors are not acting as rubber stamps and exert their own discretion as to whether or not to prosecute." United States v. Allen, 954 F.2d 1160, 1166 (6th Cir.1992) (citing United States v. Batchelder, 442 U.S. 114, 125 (1979)). In the instant case, even if state authorities did "trigger" a federal investigation of Odom's activities, this action did not amount to a violation of Odom's due process rights. The subsequent federal investigation revealed that Odom had violated federal law, and the federal authorities chose to pursue a federal prosecution. Under Jordan and Allen, this decision to prosecute did not violate Odom's due process rights.
 
 
 10
 As support for this claim Odom argues that the jurisdictional interaction between state and federal authorities in the instant case is analogous to state and federal interactions that violate the Speedy Trial Act. Odom points out that where a state arrest and detention are a "mere device" used to restrain a defendant until federal authorities choose to prosecute, the time in state custody is included in the federal speedy trial calculation. United States v. Cordova, 537 F.2d 1073, 1076 (9th Cir.), cert. denied, 429 U.S. 960 (1976); United States v. Cabral, 475 F.2d 715, 718 (1st Cir.1973). Odom argues that just as federal authorities must account for state actions in the speedy trial scenario, so should federal authorities account for the actions of state authorities in entering into the state court plea agreement in the instant case. The argument is not convincing. First, as already noted, case law directly disputes Odom's contention that the interaction between state and federal authorities in this case violated his due process rights. Second, even if this analogy were appropriate, as the government points out, "[t]he state arrest, prosecution, and sentence in the present case cannot be construed as a mere temporary device to hold defendant until the federal government chose to prosecute." Gov't Br. at 13.
 
 
 11
 Finally, another, and perhaps more analogous, scenario also conflicts with Odom's claim. Cooperation between state and federal authorities in bringing separate state and federal prosecutions arising from the same criminal conduct does not violate the Double Jeopardy Clause unless it can be shown that the federal (state) authorities used the state (federal) prosecutor as a "tool," or that the state (federal) prosecution was a "sham or cover" for a second federal (state) prosecution. Bartkus v. Illinois, 359 U.S. 121, 123-24 (1958); Jordan, 870 F.2d at 1312-13. In Jordan, the Seventh Circuit actually approved the state prosecutor's notification to ATF of the defendant's potential for federal prosecution as "commendable cooperation." 870 F.2d at 1313. Odom has presented no evidence that the state authorities used the federal prosecutor as a "tool" or that the federal prosecution was a "sham or cover" for a second state prosecution.
 
 IV.
 
 12
 Second, Odom argues that because he was not aware at the time that he entered into the plea agreement in state court that he could be prosecuted in federal court, his guilty plea in state court was not voluntarily and intelligently made. We disagree.
 
 
 13
 A guilty plea entered into in state court must be voluntarily and intelligently made. Boykin v. Alabama, 395 U.S. 238, 242 (1968). A plea is voluntary when it has not been induced by threat, by misrepresentation, or by improper representations such as bribes, and the defendant is fully aware of the direct consequences of the plea when he enters into it. Brady v. United States, 397 U.S. 742, 755 (1969). "Defendant need only be aware of the direct consequences of the plea; ... the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." King v. Dutton, 17 F.3d 151, 153 (6th Cir.), cert. denied, 114 S.Ct. 2712 (1994); see United States v. Long, 852 F.2d 975, 979 (7th Cir.1988) ("The state and federal systems are separate and distinct, and the defendant need only be informed of the direct consequences he may face within the particular system."); United States v. Bouthot, 878 F.2d 1506, 1511 (1st Cir.1989). A defendant's guilty plea is intelligently made if he was advised by competent counsel, was made aware of the nature of the charge against him, and he was not otherwise incompetent. 397 U.S. at 756.
 
 
 14
 We first consider whether Odom's plea was voluntary. Odom has not alleged that his plea was induced by threats or improper representations. Nor has he alleged that the state authorities agreed or otherwise affirmatively indicated that Odom would not be federally prosecuted. There is nothing in the record to indicate that any promises were made in the state plea agreement regarding federal prosecution. Odom has alleged to some extent, however, that the state authorities misrepresented the nature of the plea agreement by not disclosing the fact that Odom could be federally prosecuted. The First and Seventh Circuits have expressly rejected this argument. In Jordan, Jordan argued that the State Attorney's failure to disclose his communications with ATF and the possibility of federal prosecution was a material misrepresentation that amounted to breach of the plea agreement. The Seventh Circuit noted that "[a] prosecutor offends due process when he breaches a plea agreement," 870 F.2d at 1316 (citing Santobello v. New York, 404 U.S. 257 (1971)), but the court held that the State Attorney did not breach the plea agreement because he was under no duty "to discuss all possible ramifications of a defendant's guilty plea." 870 F.2d at 1316. Similarly, the First Circuit has held that a state prosecutor did not make a misrepresentation that would render the defendant's guilty plea involuntary when the state prosecutor did not disclose the possibility of federal prosecution to the defendant during plea bargaining. United States v. Campusano, 947 F.2d 1, 5 (1st Cir.1991). This court has not previously addressed this issue. Applying the rationales of the Seventh and First Circuits in Jordan and Campusano, we find that Odom's plea was not induced by misrepresentations.
 
 
 15
 Thus, Odom's plea will be voluntary if he was fully aware of the direct consequences of his plea. The Seventh Circuit has held that the possibility of federal prosecution is not a direct consequence of a guilty plea. 870 F.2d at 1317. The Seventh Circuit has defined "direct consequences" as the 'immediate, and automatic consequences' of the guilty plea." 870 F.2d at 1317 (quoting United States v. Suter, 755 F.2d 523, 525 (7th Cir.), cert. denied, 471 U.S. 1103 (1985)); accord United States v. Campusano, 947 F.2d 1, 5 (1st Cir.1991). The Seventh Circuit has held that even where the State Attorney had actually advised federal authorities that a defendant was probably eligible for federal prosecution, the possibility that the defendant would be federally prosecuted was not within the State Attorney's control, and thus was not an immediate and automatic consequence of defendant's guilty plea in state court. 870 U.S. at 1317.[3] In so doing, the Seventh Circuit expressly disagreed with the holding in United States v. Edwards, 669 F.Supp. 168 (S.D.Ohio 1987), where the court decided that a state court guilty plea was not admissible in a subsequent federal prosecution where the defendant was not informed in the state court proceeding that his plea could be so used.[4] 870 F.2d at 1318 n. 2. The First and Fifth Circuits have similarly disagreed. See Bouthot, 878 F.2d at 1511 n. 3; United States v. Maestas, 941 F.2d 273, 279 n. 8 (5th Cir.1991), cert. denied, 112 S.Ct. 909 (1992). This court has held that the subsequent use of a guilty plea as an aggravating circumstance in a separate, pending proceeding without informing the defendant at the time of his plea that his plea could be so used, did not render the guilty plea involuntary. King, 17 F.3d at 154-55. The King court held that this use of the plea was not "a direct, immediate, or automatic result" of the plea, and thus "[t]he state trial court was under no constitutional obligation to inform [the defendant] of the possible impact [in the other proceeding] of ... his guilty plea." 17 F.3d at 155.[5] We hold that Odom's plea in state court was voluntary.
 
 
 16
 With regard to whether Odom's guilty plea in state court was intelligently made, Odom has not alleged that he was not competent, that he was not aware of the charges against him, or that his counsel was not competent. In the absence of any allegations or evidence of this nature, this court has no grounds on which to find that Odom's plea was not intelligently made. The record indicates that Odom pled guilty in state court, with the understanding that in return the state prosecutor would not seek enhanced sentencing. J.A. at 34-35. In the words of the Seventh Circuit:
 
 
 17
 [Defendant's] mistake was that he assumed he would only be prosecuted in state court for his ... crimes. He can complain of nothing but his own ignorance of the law.... It was [his] failure to foresee that his conduct violated federal law that led to his present frustration and not any wrongdoing on the part of the County or government.
 
 
 18
 United States v. Long, 852 F.2d 975, 978 (7th Cir.1988). We find Odom's plea to have been intelligently entered.
 
 V.
 
 19
 Finally, Odom argues that because his guilty plea in state court was obtained in violation of his right to due process, evidence of this plea and any admissions he made in the state court proceeding should not have been admissible in his federal prosecution. Because Odom's guilty plea was validly obtained in state court, evidence of the plea and admissions he made during that proceeding are properly admissible in federal court. Jordan, 870 F.2d at 1319; Long, 852 F.2d at 980; Maestas, 941 F.2d at 278-79.
 
 VI.
 
 20
 For the foregoing reasons, we AFFIRM the decision of the district court.
 
 
 
 [1]
 Specifically, Odom points to the "mysterious" telephone call that Agent Ratliff received in the last week of January 1992 informing him of Odom's guilty plea in state court. Odom Br. at 9
 
 
 [2]
 In United States v. Jordan, Jordan had pled guilty in state court to attempted murder, and in exchange for that plea the State's Attorney dismissed related charges of armed violence and unlawful use of a weapon and agreed to recommend the minimum statutory term of six years imprisonment. 870 F.2d at 1311. Six months prior to this plea agreement, the State's Attorney's office had notified ATF of Jordan's arrest and criminal record, and suggested that ATF prosecute Jordan for possession of a firearm by a career criminal. Jordan was subsequently indicted by a federal grand jury on that charge. In the federal proceeding, Jordan moved to suppress evidence of his state court guilty plea. The district court denied the motion. Jordan was convicted by jury, and was sentenced to 20 years imprisonment. The Seventh Circuit affirmed Jordan's conviction
 
 
 [3]
 Specifically, the Seventh Circuit stated the following:
 [T]he State's Attorney's notification to the ATF was nonbinding on the ATF and the federal prosecutor. Nothing required the federal government to prosecute Jordan. The federal government had to investigate the allegation, determine that sufficient evidence existed to support a prosecution, and exercise its prosecutorial discretion. The federal prosecution was not "automatic."
 870 F.2d at 1317.
 
 
 [4]
 In Edwards, the court held that where no one informed the defendant of the possible use of his state court plea in a federal prosecution, the defendant "did not know the nature of the charge against him or the consequences of his guilty plea and thus his guilty plea was not knowingly made." 669 F.Supp. at 171
 
 
 [5]
 In King, the facts did not establish that the trial judge knew that the defendant's plea could be used to enhance his sentence in a case pending in another jurisdiction. Nevertheless, in dicta, the King court stated that "we are unable to discern ... the limits of a rule requiring a sentencing judge to inform a defendant of the collateral effects of a conviction based on a guilty plea, even if limited to cases where the judge knows of other pending cases and the possible use of the conviction in them." 17 F.3d at 155. The First Circuit has explicitly held that " '[a] state judge, even if she is aware of the federal implications of a state conviction, is not constitutionally required to warn a defendant about his federal exposure before accepting his guilty plea.' " Campusano, 947 F.2d at 5 (quoting Bouthot, 878 F.2d at 1512)