UNITED STATES of America, Plaintiff,

v.

Michael ALVAREZ, Defendant.

No. 96 CR 87–3.

United States District Court,
N.D. Illinois
Eastern Division.

May 24, 1996.

George Patrick Lynch, Downers Grove, IL, for defendant.

Canella Elizabeth Henrichs, United States Attorney's Office, Chicago, IL, for plaintiff.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant Michael Alvarez ("Alvarez") to dismiss the indictment. For the reasons which follow the motion is denied.

### FACTS

On March 4, 1996, a federal grand jury returned a three count superseding indictment charging Alvarez and fourteen others with conspiracy and conducting an illegal sports bookmaking business from the mid 1980s to at least April, 1991 (Counts One and Two). Count One charges defendant Alvarez with conspiracy, as one of two "layoff" bookmakers used to more evenly balance the amount of money wagered on each side of a sporting event. These layoffs would reduce the financial risk to the illegal gambling business. Count One further charges Alvarez with an overt act at paragraph "aa.," namely a conversation on March 28, 1991, between Alvarez and codefendant James Yario about the "line," referring to sports line information for that day.

On February 4, 1994, a state grand jury returned indictments, charging Alvarez with conspiracy and syndicate gambling between December, 1990 and May, 1992. According to the indictment, Alvarez "agreed with John Constabile to the commission of that offense in that John Constabile introduced (undercover Naperville Police Officer) William Nichols to Michael Alvarez so that William Nichols" could and did place a series of wagers with Alvarez. On May 8, 1995, Alvarez was convicted of syndicated gambling (Indictment # 94 CF 281–1, Eighteenth Judicial Circuit, County of DuPage) and was sentenced to four years in the custody of the Illinois Department of Corrections. The evidence in the state case consisted primarily of the testimony of Officer Nichols concerning the meetings and wagers between Officer Nichols and Alvarez.

Alvarez argues that the instant federal prosecution unconstitutionally subjects him to double jeopardy, and that the prosecution is only proceeding because the government was not satisfied with his ultimate state sentence. The government intends to offer into evidence in the present case all of the evidence used by the State to convict Alvarez in Indictment # 94 CF 281–1. In addition, the government intends to use evidence not available during the state prosecution, including evidence relating to Alvarez's gambling operation and how it was operated during 1988, evidence of layoffs made by Yario to Alvarez between early 1990 to approximately April 1991, phone records, pen register data, and testimony of witnesses. Alvarez was one of those persons intercepted in the court-authorized interception of the telephones associated with Yario, although Alvarez's identification was subsequent to the termination of the interceptions. Furthermore, no intercepted conversation from this investigation was provided to the State for use in their prosecution of Alvarez.

The government intends to introduce during trial, admissible under Federal Rules of Evidence 404(b), Alvarez's continued operation of his own bookmaking operation and his turnover of that business to one of his criminal associates while he was serving a period of incarceration. The government may also use the testimony of certain codefendants who have pleaded guilty to certain counts in the federal indictment.

By letter dated January 29, 1996, the Department of Justice, Washington, D.C. notified the local U.S. Attorney that waiver of the Petite Policy was appropriate and approved in the Alvarez's case. [Submitted *in*

*camera*, as Government Exhibit C]. The court has reviewed the exhibit.

The government agrees that the Alvarez's criminal conduct came under the scrutiny of several investigative agencies, both state and federal, and that there may have been some overlap in investigations. Alvarez's alleged criminal conduct spanned years and several counties within the State of Illinois. Federal authorities may have cooperated with state authorities or *vice versa*.

Alvarez contends that the state prosecution of him was part of the federal government's "Operation Hard–Find." The government responds that the federal investigation referred to by Alvarez's "Hard–Find" did not pertain to this case and that "hard-find" was not the correct code name for this investigation. Operation Hard–Find was an FBI–IRS undercover money-laundering investigation of Celozzi–Ettleson Chevrolet. *United States v. Celozzi*, 95 CR 104. The prosecutors assigned to the *Celozzi* case were Assistant United States Attorneys John Podliska and Judith Dobkin.

Defendant does not dispute that the dual sovereignty doctrine entitles separate sovereigns to prosecute a person for the same conduct if such conduct violates the law of each. *United States v. Zarnes*, 33 F.3d 1454, 1470–71 (7th Cir.1994). The Supreme Court "has plainly and repeatedly stated that two identical offenses are not the 'same offense' within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns." *United States v. Robinson*, 42 F.3d 433, 434 (7th Cir.1994) (quoting *Heath v. Alabama*, 474 U.S. 82, 92, 106 S.Ct. 433, 439, 88 L.Ed.2d 387 (1985)). *See United States v. McKinley*, 23 F.3d 181, 184–85 (7th Cir.1994). The government states that mere cooperation between State and Federal officials does not trigger an exception to the dual sovereignty doctrine, and this is where the true issue lies in this case. Alvarez does concede that the dual sovereignty doctrine precludes his claim unless a recognized exception applies. And the burden is upon the Alvarez to establish that exception. Mere accusations and general allegations of the type presented fall short of carrying that burden. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

In his motion, Alvarez asks: What possible compelling interest could the federal government have to double prosecute a defendant who has been convicted in state court based upon the fruits of the federal investigation and given four years in the penitentiary? According to Alvarez, the only "interest of justice" the government has in the case at bar is to preclude Alvarez from seeking assistance in getting a fair sentence by petitioning his duly elected representatives, as well as the Department of Corrections. Defendant adds that the government may not permissibly have a policy that is arbitrarily and capriciously administered, and that the very idea that the Petite Policy can be utilized as a whip to further the interest of the executive branch of government does not comport with "the interest of justice."

■ However, the government obtained waiver of the Petite Policy as to the Alvarez. Alvarez attempts to attack that waiver, stating that the government has "sidetracked" the Petite Policy. However, the government has abided by its policy and has in this case obtained a waiver.

Most recently, in *United States v. Gary*, 74 F.3d 304, 313 (1st Cir.1996), the court stated:

We have repeatedly held that the Petite policy does not confer substantive rights on criminal defendants. *See* [*United States v.*] *McCoy*, 977 F.2d [706] at 712 [ (1st Cir.1992) ]; *United States v. Booth*, 673 F.2d 27, 30 (1st Cir.1982) . . . .

In *United States v. Schwartz*, 787 F.2d 257, 266–67 (7th Cir.1986), the Seventh Circuit quite clearly stated its position:

The Supreme Court long ago established that the United States may bring a criminal prosecution even after a person had been tried for and acquitted of the same conduct in state court. . . . Separate sovereigns may make their own decisions—be they complementary or conflicting—about who should stand trial, and for which charges . . . . The question whether to proceed with prosecution is for the Executive Branch and the grand jury alone.

Alvarez's motion argues that the attempt by the government to put his "feet to the fire" a second time, and to punish him further for the same conduct, violates his rights not only to former jeopardy and due process of law, but also violates any concept of protection against cruel and unusual punishments. Further, Alvarez contends that the government could have pursued the indictment against him while he was in its custody from 1991 through August 1995. Alvarez further avers that to "idly sit by and allow the state courts to maul the defendant and then jump in for seconds" violates any concept of fair sentencing. Defendant does not, however, state any prejudice from the delay.

Alvarez contends that the *Bartkus* exception to the dual sovereignty doctrine applies in this case because the federal government controlled the state prosecution and indictment. Alvarez's reliance upon the so-called *Bartkus* exceptions is misplaced. The exception sought to be invoked by Alvarez stems from a passage in *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

The court agrees with the government that the so-called *Bartkus* exception has gradually been eroded in the Seventh Circuit, as well as other circuits,—to the point of extinction. *United States v. Brocksmith*, 991 F.2d 1363 (7th Cir.1993); *United States v. Paiz*, 905 F.2d 1014 (7th Cir.1990). In both cases, the defendant requested a hearing on the *Bartkus* issue and the request for a hearing was denied by the district court. In each case the Seventh Circuit held that the district court was within its discretion in denying the defendant's request for a hearing.

In the most recent decision dealing with this issue, *Brocksmith*, the Seventh Circuit questioned whether *Bartkus* meant to create such an exception. In *Brocksmith*, pursuant to the dual sovereignty doctrine, there was a federal prosecution of an insurance agent for mail fraud. The prosecution was not was not barred by double jeopardy even though the insurance agent had previously been charged by the State of Illinois with knowingly exerting unauthorized control over clients and was acquitted of those charges. The court, in making its findings, stated:

Brocksmith contends that the district court should at least have held an evidentiary hearing to determine whether his federal prosecution was a "sham." The case of *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), supposedly recognized an exception to the dual sovereignty doctrine in situations where one sovereign's prosecution serves as a tool for a second sovereign that previously prosecuted the defendant. *See id.* at 2123–24, 79 S.Ct. at 678. We have questioned whether *Bartkus* truly meant to create such an exception, and we have uniformly rejected such claims. *See United States v. Paiz*, 905 F.2d 1014, 1024 (7th Cir.1990), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). In any event, conversations and cooperative efforts between state and federal investigators of the kind Brocksmith alleges are "undeniably legal" and are, in fact, "a welcome innovation" in law enforcement techniques. *See id.* at 1024 (quotation omitted).

991 F.2d at 1366–67.

In *Paiz*, the Seventh Circuit found that a defendant's conviction on a marijuana conspiracy count was not barred by double jeopardy by virtue of a prior state court prosecution having a similar factual basis as the subsequent federal prosecution. The language and analysis of this case is applicable to the present case:

[T]he "sham prosecution" exception to the dual sovereignty doctrine, if it exists at all, is a narrow one, an extremely narrow one. Cases of this Court dealing with claims of "sham prosecutions" have recognized this: We have uniformly rejected such claims. *See Jordan*, 870 F.2d at 1312–12; *Aleman*, 609 F.2d at 309.

In *United States v. Jordan*, 870 F.2d 1310, 1313 (7th Cir.1989), while the Seventh Circuit recognized the so-called "*Bartkus* exception" citing *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir.1979), it refused to apply it under the facts in *Jordan*, where there was a dual prosecution by State and Federal authorities.

Alvarez's second contention raises the issue of whether the government's conduct

reached an unconstitutionally impermissible threshold, which presents a question of law for this court to resolve based upon the alleged facts. However, that does not include a review of the basis for waiver of the Petite Policy, *supra*, which appears to be his primary contention under this issue.

■ The government argues that, to the extent that Alvarez seeks dismissal of the indictment for prosecutorial misconduct, his motion is meritless. The court agrees. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). *See United States v. Boyd*, 55 F.3d 239, 241 (7th Cir.1995) (doctrine of "outrageous government misconduct" does not exist in the Seventh Circuit); *United States v. Burke*, 781 F.2d 1234, 1235 (7th Cir.1985); *United States v. Schwartz*, 787 F.2d 257, 266–67 (7th Cir.1986); *United States v. Roth*, 777 F.2d 1200, 1205 (7th Cir.1985); and *United States v. Finley*, 705 F.Supp. 1297 (N.D.Ill.1988), *aff'd.*, 934 F.2d 837 (7th Cir. 1991). *See also, United States v. Pedraza*, 27 F.3d 1515 (10th Cir.1994); *United States v. Garza–Juarez*, 992 F.2d 896 (9th Cir.1993); and *United States v. Mosley*, 965 F.2d 906 (10th Cir.1992).

■ Assuming, *arguendo*, that a defendant may raise a claim of government misconduct as a ground for seeking dismissal of an indictment, Alvarez has failed to make any showing to warrant either discovery or a hearing on the issue. Alvarez is not entitled to discovery unless he shows a "colorable basis" for his claim, which is some evidence tending to show the essential elements of the claim which rise beyond the level of unsupported allegations. *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir.1990). Where, as here, a defendant has made neither a showing nor an allegation of any impropriety by persons making the decision to waive the Petite Policy and to seek an indictment of him, he has not shown a colorable basis for discovery on a claim of selective or vindictive prosecution. *United States v. Goulding*, 26 F.3d 656, 661–62 (7th Cir.1994);

*United States v. Benson*, 941 F.2d 598, 611–13 (7th Cir.1991).

Additionally, certain authorities relied upon by the Alvarez, *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) are inapposite, because they were overruled by *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The court finds that the Alvarez's motion is insufficient as a matter of law for purposes of obtaining either discovery or a hearing for alleged "prosecutorial vindictiveness" or "outrageous government conduct." These issues are closed in view of *Boyd, supra.*

■ With regard to the investigation, the decision to conduct a criminal investigation is not subject to judicial review unless invidious criteria such as race or religion infect the decision. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962); *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir.1992). Such issues are not raised by the Alvarez and are not apparent in the history of this case.

■ As to any delay of the federal indictment, sometimes preindictment delay can so work to defendant's disadvantage as to be deemed to deny him due process. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). However, such delay occurs only when there is a tangible showing of prejudice, such as the loss of a vital defense witness. *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971); *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986); *United States v. Anagnostou*, 974 F.2d 939, 942–42 (7th Cir. 1992). The fact that the defense was "somewhat prejudiced" will not do. *United States v. Lovasco*, 431 U.S. at 796, 97 S.Ct. at 2052; *Wilson v. McCaughtry*, 994 F.2d 1228, 1233 (7th Cir.1993); *United States v. Nichols*, 937 F.2d 1257, 1261 (7th Cir.1991). Even concrete prejudice may not be enough. The defendant may have to show that the government's delay was deliberate, that it was try-

ing to wrest a tactical advantage by delay. And the anxiety of uncertainty is not an acceptable substitute for a concrete showing of prejudice, *United States v. Anagnostou,* 974 F.2d at 942 n. 1, let alone for deliberate governmental misconduct. Nor is added expense. *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). A federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only violated the defendant's rights but also prejudiced his defense, and neither condition is satisfied here. *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981); *United States v. Payner,* 447 U.S. 727, 739 n. 1, 100 S.Ct. 2439, 2448 n. 1, 65 L.Ed.2d 468 (1980). *United States v. Boyd,* 55 F.3d 239, 241 (7th Cir.1995) (rejecting the doctrine of outrageous government misconduct); *United States v. Muthana,* 60 F.3d 1217, 1224–25 (7th Cir.1995) (a sentencing manipulation claim is distinct from a claim of outrageous government conduct.) Alvarez has not made an argument or showing of prejudicial delay or a violation of his rights.

### Conclusion

In sum, "a judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them. Prosecutorial discretion resides in the executive, not in the judicial, branch, and that discretion, though subject of course to judicial review to protect constitutional rights, is not reviewable for a simple abuse of discretion." *Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *United States v. Schwartz,* 787 F.2d 257, 266–67 (7th Cir. 1986). Defendant's motion for discovery on the issues raised in the motion to dismiss and for an evidentiary hearing on the motion are denied. Defendant's motion to dismiss the indictment is denied.

IT IS SO ORDERED.