**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William J. COSTELLO, Jr.,
Defendant-Appellant.**

**No. 83–2205.**

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1984.

Decided Aug. 21, 1984.

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

Mary Stowell, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

Defendant-appellant William J. Costello was convicted in federal district court on charges of committing and conspiring to commit arson in violation of 18 U.S.C. §§ 371, 844(i). Costello was sentenced to three years' imprisonment to be followed by five years' probation. Costello raises only one issue on appeal. He contends that an incriminating statement he gave to agents of the Federal Bureau of Investigation should have been suppressed at trial because he made the statement in contemplation of receiving statutory immunity.

## I. FACTS

On March 8, 1981, a fire destroyed the premises of the Holiday Oldsmobile car dealership in Cicero, Illinois. The dealership was owned by Leslie Cohodes, who employed appellant and appellant's co-defendant at trial, Carl Calvino, as mechanic and general manager respectively. Agents Jimmy Garcia and Gary Dunn of the FBI were assigned to investigate whether the fire had been deliberately set, and they interviewed appellant in connection with their investigation on April 9. Appellant denied wrongdoing on his part, but he did inform the agents that Cohodes and several employees had removed furniture from the dealership a few days before the fire. On April 10, the agents interviewed Calvino, who initially denied participation in the crime of arson. The agents, however, told Calvino that they suspected him although he was not the prime object of their investigation. They informed Calvino that if he participated in the crime, he probably would be prosecuted but that his cooperation with the Government could "work to [his] advantage." Calvino then confessed to the crime, and he also implicated a third employee. He did not, however, tell the

agents whether appellant was involved in the crime. Shortly before leaving Calvino, the agents suggested that he tell appellant "that if he [appellant] cooperated with us also, if he was in fact involved, and he cooperated, that certainly his cooperation, too, would be made known to the United States Attorney's Office." Calvino communicated this message to appellant, and on April 15 appellant appeared at the FBI office in Chicago for an interview with Garcia and Dunn. The agents advised appellant that he was under no obligation to speak with them, that he was a potential defendant in a later criminal action, and that he could terminate the interview at any time. The agents did state that they would inform the United States Attorney of appellant's cooperation, but they made plain to appellant that they could not grant immunity because "immunity ... is not under the FBI's jurisdiction." Appellant said that he understood the points made by the FBI agents. Appellant then admitted that he had set the fire while Calvino stood guard. He had received $2500 for his participation in the crime from Cohodes, who wanted the dealership burned in order to destroy evidence of other illegal activity.

At the conclusion of his interview with Garcia and Dunn, appellant was given a grand jury subpoena, requiring his appearance on April 22. On April 22, Assistant United States Attorney William Cook met with agent Garcia, appellant, and Calvino shortly before the latter two were to appear before the grand jury. Agent Garcia told Cook that he had made no promise of immunity to either appellant or Calvino, but he did state that he had promised to make their cooperation known to the Office of the United States Attorney. Cook then interviewed appellant and Calvino. Each admitted that the FBI had made no promise of immunity and each stated that he was was willing to appear before the grand jury. Cook, however, concluded that they did not understand the risks of appearing before a grand jury, and he therefore took

---

* William J. Campbell, Senior District Judge of the Northern District of Illinois, sitting by desig- nation.

them to the public defender's office to obtain counsel. Appellant never appeared before the grand jury.

Assistant United States Attorney Cook submitted a petition requesting statutory immunity for appellant and Calvino, but Cook's superiors at the Office of the United States Attorney denied the petition. Cook's superiors apparently reasoned that immunity was not appropriate in light of the severity of the crime charged. On October 6, 1982, a federal grand jury returned an indictment against appellant and Calvino. Appellant moved to suppress the statements he gave to Garcia and Dunn concerning his participation in setting the fire that destroyed the Holiday Oldsmobile dealership. On April 11, 1983, District Judge Prentice Marshall held a hearing on the motion to suppress, and he took testimony from, inter alia, Garcia, Dunn, Cook, and appellant. On April 13, Judge Marshall denied the motion, stating:

> [O]n the basis of the totality of the evidence, I find that Mr. Garcia and his colleague, Dunn, did not make promises to Costello which would vitiate the admissions that Costello made. Concededly, again, it appears that there were discussions with regard to the agents' willingness to make known Costello's cooperation to the appropriate agents—or the appropriate agency of the Government. Those representations were lived up to. The representations or assurances that were given to Mr. Costello were not deceitful. They did not trick him. They didn't over-bear him. They did not render his admissions involuntary.

Costello waived a jury trial and submitted his case to Judge Marshall substantially on stipulated facts, reserving the issue of the admissibility of his statements to the FBI. Judge Marshall found Costello guilty as charged.

## II. DISCUSSION

In *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897), the Supreme Court held that confessions, to be admissible, cannot be extracted by threats nor induced "by any direct or implied promise, however slight." Either method of obtaining confessions renders the accused's statements involuntary and hence excludable. Following the guidelines we set out in *United States v. Reynolds*, 532 F.2d 1150, 1156 (7th Cir.1976) and *United States v. Springer*, 460 F.2d 1344 (7th Cir.1972), *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 Judge Marshall carefully scrutinized the representations that the Government made to appellant in the instant case to determine whether appellant's admission was induced by promises. Judge Marshall concluded that the admission was not induced by promises and hence was voluntary. The finding of voluntariness is one of fact, *see United States v. Shelby*, 573 F.2d 971, 975 (7th Cir.1978), *cert. denied*, 439 U.S. 841, 899 S.Ct. 132, 58 L.Ed.2d 139; *United States v. Reynolds*, *supra*, at 1156, and we consequently will not set aside Judge Marshall's finding unless it is clearly erroneous, *United States v. Shelby*, *supra*, at 975; *United States v. Reynolds*, *supra*, at 1156.

When appellant first met Agents Garcia and Dunn on April 9, 1981, he made no incriminating statements. On April 10, Calvino, following the suggestion of Garcia and Dunn, encouraged appellant to cooperate with the Government. On April 15, Garcia and Dunn explained to appellant that he was under no obligation to speak, that he could terminate the interview at any time, that he might be a defendant in a subsequent criminal prosecution, and, more significantly, that the FBI was not authorized to grant appellant immunity. Appellant said that he understood the points made by Garcia and Dunn. One week later, appellant confirmed in a conversation with Assistant United States Attorney Cook that the FBI had made no promise of immunity on April 15. In our opinion, the record shows that the FBI agents conscientiously informed appellant that he was taking an identifiable risk when he spoke with them. Appellant made a rational choice to bear that risk, and we accordingly can iden-

tify no clear error in Judge Marshall's finding of voluntariness.

■ At oral argument, counsel for appellant contended that even if the use of appellant's admission did not violate the Self-Incrimination Clause of the Fifth Amendment, the Due Process Clause of that Amendment still barred its use at trial. When Congress enacted the immunity statute, counsel maintained, it sought to accommodate the interests of criminal suspects and at the same time provide a means by which the Government could obtain truthful testimony. In the instant case, appellant offered information in contemplation of immunity, but he never received immunity because of the unilateral decision of the Government. Thus, in the end the Government obtained the information it sought without acceding to appellant's interests. In an instance such as this, counsel argued, the parties should be restored to their original positions, and the failure to effect such a restoration violates principles of fundamental fairness embodied in the Due Process Clause.

In our opinion, counsel's reliance on the Due Process Clause is misplaced. The Due Process Clause prevents conviction based upon governmental misconduct, but it does not protect a defendant who makes a tactical choice that turns out to be a poor one. If appellant had been cautious, he would have secured the type of ancillary immunity agreement we described in *United States v. Rothman,* 567 F.2d 744, 746–47 (7th Cir.1977). In *Rothman,* an individual sought immunity in exchange for information in which the Government was interested. The individual revealed part of the information under the explicit understanding that the Government, if it ultimately decided not to grant immunity, would not use against him the information he disclosed during the interview. In the instant case, appellant could have insisted upon the same ancillary agreement the individual in *Rothman* obtained. Although the Government told appellant he was subject to later prosecution, appellant failed to provide for the contingency that the Government would not immunize him. Appellant suffered a detriment when he proceeded incautiously and volunteered information, but a tactical misjudgment of appellant's own making such as this does not render his conviction in violation of the Due Process Clause.

It is no doubt true, as counsel maintains, that the Government received a benefit in this case without suffering the type of detriment it generally incurs when it obtains information from an accused who expects to be immunized. We do not agree with appellant's counsel, however, that the Due Process Clause forbids the Government to profit in this way. Had the Government sought appellant's cooperation knowing immunity was legally forbidden or had the Government acted without the good faith intent to obtain immunity, then appellant would have a colorable argument that fundamental fairness requires reversal of his conviction. Immunity was, however, possible in this case and the Government did in fact try to obtain immunity for Costello. In an instance such as this, where the Government dealt honestly with the accused, the mere fact that the Government did not incur a detriment it generally suffers does not implicate Due Process guarantees.

## CONCLUSION

Having considered all the arguments raised by the parties to this appeal, we conclude that the district court did not err when it denied appellant's motion to suppress incriminating statements he made to agents of the FBI. Accordingly, appellant's conviction is

Affirmed.