**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul LONG, Defendant–Appellant.**

**No. 87–2535.**

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1988.

Decided July 20, 1988.

Mark A. Rose, Peoria, Ill., for defendant-
appellant.

Bradley W. Murphy, Asst. U.S. Atty., J.
William Roberts, U.S. Atty., Peoria, Ill., for
plaintiff-appellee.

Before WOOD, Jr., POSNER and
EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit
Judge.

Paul Long divulged his role in several
Tazewell County, Illinois burglaries in ex-
change for the County's promise that it
would do no more than impose a sentence
equal and concurrent to that received for
several neighboring Fulton County burgla-
ries also committed by Long. The United
States, which had no role whatsoever in
Long's Tazewell or Fulton County state
court prosecutions, later charged him with
violating a federal statute prohibiting pos-
session of a weapon by a career criminal,
offering as part of its proof Long's Taze-
well County disclosure, which had led to
the recovery of a stolen gun. Long sought
to suppress the statement and the gun,
arguing that his Tazewell County disclo-
sure was *voluntary* for purposes of the
state prosecution but *involuntary* and in-
admissible for purposes of the federal pros-
ecution. The district court denied the mo-
tion to suppress. Following a bench trial,
defendant was convicted and sentenced to a
term of eighteen years to run concurrently
to the concurrent fifteen-year sentences he
had received for his Tazewell County and
Fulton County convictions.[1] We affirm.

---

1. Long expects that he will serve a prison term
of seven and one-half years as a result of the
fifteen-year concurrent state sentences. He esti-
mates that the computation of actual prison
time to be served for his eighteen-year federal
sentence would be between eleven and twelve
years. Therefore, the federal conviction may
result in an additional four to five years in
custody over that which he received for his state
convictions.

## I. BACKGROUND

A Fulton County law enforcement officer arrested Long for his suspected role in several Fulton County burglaries. Several hours after his initial arrest (he temporarily escaped and was recaptured) Long admitted, after receiving *Miranda* warnings, that he had committed three burglaries in Fulton County. The next morning several officers searched Long's residence, discovering items they suspected were stolen. Later in the day, around early evening, several officers from Tazewell County visited Long in the Fulton County jail and told him of the discovery of suspected stolen items at his residence and of the likelihood that charges would also be filed against him in Tazewell and other counties. Long asked that potential charges in all counties be resolved at one time in exchange for his cooperation; the officers declined. Long then proposed that he cooperate with Tazewell County authorities in exchange for the County's promise that his Tazewell County sentence would not exceed the sentence he received in Fulton County and would run concurrently to the Fulton County sentence. After consulting with the Tazewell State's Attorney's Office, the officers agreed, reaffirming that the agreement covered Tazewell and not any other counties. With the agreement consummated, Long proceeded to admit his role in several Tazewell County and several more Fulton County burglaries. He admitted taking a gun in one of the Tazewell crimes, which was found by Fulton County officers during the recovery of property stolen from that county. In state court Long received a sentence of fifteen years for the Fulton County burglaries, and as agreed to, a concurrent sentence of fifteen years for the Tazewell County burglaries.

Subsequently, Long was prosecuted in federal court; possession of a gun by a three-time felon violated federal law. 18 U.S.C.App. § 1202(a) (repealed 1986). An important part of the government's case was Long's disclosure regarding the gun pursuant to his cooperation agreement with Tazewell County. Reasoning that the disclosure was voluntary for federal purposes, the district court admitted Long's state-

ment, and subsequently Long was convicted of the firearms violation.

## II. DISCUSSION

Neither Tazewell County nor the United States did anything improper, but Long would like the incriminating evidence suppressed in federal court because of his failure to foresee his federal criminal liability. Long agrees that the deal he made with Tazewell County to provide information regarding burglaries in exchange for a promise regarding the state sentence he would receive was properly carried out and that the County in no way did anything injurious of his rights: Tazewell did nothing to hide any federal criminal prosecution he might face, or mislead him, and made it clear that the agreement was limited to the consequences he might face in Tazewell County proceedings. He also agrees that the federal government in no way participated in or was aware of the Tazewell County activities and did nothing to deceive him or to elicit his statement regarding the gun. Long's claim is that his statement to state officers was not voluntary for purposes of a federal prosecution because he was not warned of the potential federal criminal charges, even though the state officials were unaware of any such federal consequences.

The situation can be viewed in several ways. The first approach, and that argued by Long, is to view this as a question of whether Long voluntarily confessed. "[T]he Court's confession cases hold that the ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985); *United States v. Hawkins*, 823 F.2d 1020, 1022–23 & n. 1 (7th Cir.1987). Therefore we conduct a *de novo* review of voluntariness following the legal standard set out in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Under *Schneckloth* we consider the totality of the circumstances:

"Is the confession a product of an essentially free and unconstrained voice by his

maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted.

412 U.S. at 225–26, 93 S.Ct. at 2046–47 (citations omitted) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961)). Following only the criteria set out in *Schneckloth*, the conclusion that Long's statement was voluntary is inescapable. The questioning was conducted in a cooperative manner; *Miranda* warnings were given; Long initiated the discussion regarding an agreement; Long had several prior convictions; he had received *Miranda* warnings on numerous other occasions and is not particularly young; and he was not punished or coerced. However, this case also requires that, in addition to the criteria listed above, we consider that a defendant's will can be overborne by inducement. *See Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976) (per curiam); *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). The most far-reaching statement regarding the relationship between voluntariness and inducement is found in *Bram*, a case cited by Long. In an oft-repeated quote the *Bram* Court stated, in part, that a confession is not voluntary if it is "obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." 168 U.S. at 542–43, 18 S.Ct. at 186–87. Over seventy years later the Court explained *Bram:*

> *Bram* dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess.

*Brady v. United States*, 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). *Bram* has not been liberally applied. It does not establish a per se rule; a review of the totality of the circumstances is still required and any inducement offered to the defendant is but one fact, albeit an important one, in that analysis. *See United States v. Reynolds*, 532 F.2d 1150, 1159–60 (7th Cir.1976); *United States v. Springer*, 460 F.2d 1344, 1347 (7th Cir.), *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972). The cooperative atmosphere and the fact that Long initiated negotiations militates against finding the situation here particularly coercive, *see Reynolds*, 532 F.2d at 1157, notwithstanding that Long was not represented by counsel. As the district court found, Long is a person experienced in the criminal justice system who is attempting to strike the best possible bargain while his leverage remained high. It appears that Tazewell County was anxious to recover the items taken by Long as quickly as possible and was willing to strike a cooperation agreement to expedite the recovery. Any delay by Long may have frustrated the County's purpose and lessened his bargaining power. Long acted quickly in order to obtain the best possible deal and not because he was an overly sensitive defendant susceptible to inducement, like that which *Bram* sought to protect.

In practice, a more accurate statement of the rule for those non-extraordinary cases falling outside of the particular facts of *Bram*, and where the other circumstances surrounding the confession do not suggest that the defendant's will was overborne, may be that improper or misleading inducements make a confession involuntary. For example, leading the defendant to believe that he or she will receive lenient treatment when this is quite unlikely is improper, whereas, making a promise to bring the defendant's cooperation to the attention of the prosecutor or to seek leniency, without more, typically is not, *see Hawkins*, 823 F.2d at 1023; *Reynolds*, 532 F.2d at 1157–60; *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir.1987); *United States v. Bullock*, 642 F.Supp. 982, 987–88 (N.D.Ill.1986). Long is like the defendant who mistakenly believed he had been guaranteed leniency, only to realize subsequent to his confession that it was only a promise to argue for leniency and not a guarantee that such treatment in fact would be granted. Long's mistake was that he assumed he would only be prosecuted in state court for his Tazewell County crimes. He can complain of nothing but his own ignorance of the law. Understandably, Long was disappointed that the same Tazewell County events also led to a federal prosecution and conviction. However, hindsight realization that a deal was not as good as originally hoped for is not sufficient reason to suppress such evidence. It was Long's failure to foresee that his conduct violated federal law that led to his present frustration and not any wrongdoing on the part of the County or the government.

The County apparently did not realize that Long could face federal prosecution concerning the Tazewell County affairs. Furthermore, Tazewell officers are neither agents of the United States, nor do they have any duty to investigate federal consequences of actions they prosecute in state court and to advise a defendant accordingly. They are blameless. Moreover, the government did not have even the slightest role in the Tazewell questioning and agreement. The government did no more than utilize a statement procured by a separate and independent governmental body. This is important:

> The locus of the right is significant because it reflects the Court's consistently held view that the admissibility of a confession turns as much on whether the techniques for extracting the statements, as applied to *this* suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means as on whether the defendant's will was in fact overborne.

*Miller*, 474 U.S. at 116, 106 S.Ct. at 453 (emphasis in original). *Miller* and *Schneckloth* emphasize, in assessing voluntariness, that those doing the interrogating and the techniques they use are as important as the resultant effects on the defendant's will. That the state officials acted appropriately throughout, and the federal officials were not involved at all, supports the view that Long's disclosure was voluntary. Events proved fortuitous for the government, but just because the government's prosecution benefited from Long's ignorance, the defendant's mistake is not a sufficient reason to declare the confession involuntary. *Cf. United States v. Costello*, 750 F.2d 553, 556 (7th Cir.1984) ("[T]he Government received a benefit in this case without suffering the type of detriment it generally incurs when it obtains information from an accused who expects to be immunized.... Had the Government sought appellant's cooperation knowing immunity was legally forbidden or had the Government acted without good faith intent to obtain immunity, then appellant would have a colorable argument that fundamental fairness [under the Due Process Clause] requires reversal of his conviction."). In the absence of misstatement, trickery, or deception we fail to see how Long's statement is involuntary. *See United States v. Mannino*, 551 F.Supp. 13, 15 (S.D.N.Y.1982).

Although Long attempts to characterize the confession according to its use, finding the very same confession voluntary for state purposes but involuntary for federal purposes, he has provided no authority for

this system-by-system recharacterization. He likewise has not convinced us that knowledge of the potential federal consequences of his Tazewell County activities would have led him to forego his Tazewell County cooperation agreement. Long tells us that he would have negotiated the federal prosecution, too, if he had known of his federal criminal liability; however, this is overly speculative. Prior to the deal he struck with Tazewell County he attempted to negotiate a package deal where all the crimes he committed in various counties were the subject of a single deal. Tazewell County officials refused, at which time Long entered into the agreement where only Tazewell County made any commitment to leniency. It seems likely that Long would have stuck with his Tazewell deal, but that is of no consequence.

A second approach to this case would be to view Long's cooperation agreement similarly to a plea agreement and determine "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curiam).

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentations (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957) (en banc) (quoting the dissent to the panel decision, 242 F.2d 101, 115 (5th Cir.1957)) (quoted with approval in *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472), *rev'd on other grounds*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958). Since this is not a case where threats, misrepresentations, or improper promises taint the agreement, we are left to consider whether Long was informed of the "direct consequences" of his cooperation. *United States ex rel. Robinson v. Israel*, 603 F.2d 635, 638 (7th

Cir.1979) (en banc), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980); Fed.R.Crim.P. 11. Under Rule 11 of the Federal Rules of Criminal Procedure, this court stated that a consequence was not direct where it "has no effect whatsoever upon the length or nature of the federal sentence—although it delays the start of the sentence, it does not change the *nature* of the federal sentence." *United States v. Ray*, 828 F.2d 399, 418 (7th Cir.1987) (per curiam) (emphasis in original) (agreeing with the reasoning of *Cobb v. United States*, 583 F.2d 695 (4th Cir.1978), *cert. denied*, —— U.S. ——, 108 S.Ct. 781, 98 L.Ed.2d 867 and —— U.S. ——, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988) (three separate petitions for certiorari denied)). Assuming this reasoning might be helpful in analyzing the cooperation agreement here, it is difficult to envision how a potential federal criminal prosecution of which the state officers are not cognizant, might be a direct consequence of the agreement. Moreover, the state court has no direct role in federal prosecutions. The state and federal systems are separate and distinct, and the defendant need only be informed of the direct consequences he may face within the particular system. Therefore, the state court, even if knowledgeable about federal criminal law, need not undertake to inform the defendant of his potential federal criminal liability: the nature of the state sentence was unaffected by the federal prosecution and sentence. Had the state officers actively hidden such knowledge or colluded with federal officials there would be different circumstances to consider, but as we already have noted, such circumstances are not a part of this case.

Likewise, Long intelligently entered into the agreement, and his misapprehension of the law does not change this outcome.

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted

that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady,* 397 U.S. at 757, 90 S.Ct. at 1473.

We will not fashion a rule that requires state officials to ascertain and inform state defendants of potential federal criminal charges as a prerequisite to the government using state-negotiated statements in a subsequent federal prosecution. Absent improper state or federal action or other evidence that Long's disclosure pursuant to a state agreement was not voluntarily and intelligently made, the disclosure is properly admissible in federal court.

AFFIRMED.

EASTERBROOK, Circuit Judge, concurring.

Following *United States v. Hawkins,* 823 F.2d 1020 (7th Cir.1987), and *Sotelo v. Indiana State Prison,* 850 F.2d 1244 (7th Cir.1988), we engage in *de novo* appellate review of the voluntariness of a confession. I doubt that this is wise, for reasons given in *Sotelo,* 850 F.2d at 1253–55 (concurring opinion); I do not doubt that it is required by controlling precedent in this circuit, so I join the court's opinion.

The case contains only one legal issue requiring plenary appellate review: the effect of *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). *Bram* says that a confession "obtained by any direct or implied promises, however slight", is involuntary. Like many other appellate courts, we slide around that statement on the ground that it is inconsistent with the totality-of-the-circumstances inquiry of *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), reiterated in *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). It is inconsistent, too, with the fact that an exchange of leniency for information, a common trade in the criminal justice system, is a good thing. We usually call transactions "voluntary" when both sides gain (or have the potential to gain) something from the exchange and neither side threatens force or engages in

fraud. Courts permit confessions even under conditions that would be forbidden in forming private contracts: one party is in prison (a source of leverage many a bargainer would like to possess!) and the other is allowed a modicum of trickery. E.g., *Sotelo,* 850 F.2d at 1250–51. Long's confession, though, would be voluntary even under the contractual standard. He confessed because he thought, rightly, that he had something to gain; the state's attorney made the promise that elicited the confession because the prosecution, too, had something to gain. Long expected the confession to be used against him in state court; that was part of the arrangement rather than a reason to think his choice "involuntary". If Long's election was voluntary for this purpose, it was voluntary, period.

As an original matter, it is hard to see the objection to inducements to confess, provided both sides are truthful and the state keeps its word—as the state prosecutor did. A confession is not a guilty plea, so the prosecutor needn't inform the suspect of all of the "consequences" of the confession; a "consequence" for this purpose is a legal penalty rather than an effect on related litigation; even in accepting a formal guilty plea the state judge would not have needed to tell Long that his plea might make it easier for the federal government to convict him. *Bram* has not excluded a confession in decades; it is a derelict, offering false hope to suspects and vexing judges who must distinguish it on the way to decisions reached on other grounds. It is a source of pointless litigation, an irritant only a higher court may remove.