UNITED STATES of America, Appellee,

v.

Willie J. WILLIAMS, Appellant.

No. 96–2633.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 20, 1996.

Decided Jan. 13, 1997.

214

Kevin Curran, Assistant Federal Public Defender, argued, St. Louis, MO, for appellant.

Gabriel E. Gore, Assistant U.S. Attorney, argued, St. Louis, MO, for appellee.

Before MAGILL and MORRIS SHEPPARD ARNOLD, Circuit Judges, and LONGSTAFF,* District Judge.

* The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

LONGSTAFF, District Judge.

Appellant Willie J. Williams was found guilty by jury on all three counts of a three count indictment. Count I charged Mr. Williams with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); Count II charged him with knowingly and intentionally distributing heroin, in violation of 21 U.S.C. § 841(a)(1); and Count III charged that Mr. Williams carried a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). On June 7, 1996, the district court[1] sentenced Mr. Williams to 248 months of imprisonment.

In this direct appeal, Mr. Williams challenges the § 924(c)(1) conviction on the basis that he "incidentally" carried a firearm when he brought a drug buyer and seller together and reaped no benefits from the transaction. He also argues the federal prosecution violated the double jeopardy clause of the Fifth Amendment due to the fact he previously pled guilty in state court to charges arising from the same incident. Alternatively, Mr. Williams argues his guilty plea in state court should have been excluded from the federal proceedings because he never was informed his guilty plea at the state level could be used as evidence in the impending federal proceeding.

I.

On August 4, 1995, an undercover officer approached Mr. Williams to obtain heroin. Mr. Williams took forty dollars of the officer's money to a dealer and returned with a small amount of heroin. Mr. Williams claims he acted not as a dealer per se, but strictly as a "go-between" in the hopes of getting some free heroin for his efforts. Mr. Williams was arrested immediately after delivering the heroin to the officer. A pat-down search uncovered a fully loaded .380 caliber semi-automatic pistol in the waistband of his pants. No drugs or money were found during the search, however.

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Mr. Williams was indicted in the Circuit Court for the City of St. Louis as a result of the incident. On December 13, 1995, he pled guilty in the Circuit Court to distributing a controlled substance and unlawful use of a weapon. On December 14, 1995, the day after Mr. Williams entered his plea in state court, Mr. Williams was indicted in federal court for charges arising from the same incident. Neither Mr. Williams, his state court attorney, nor the state court judge was aware of a possible federal indictment at the time of Mr. Williams' state court plea.

Mr. Williams moved to dismiss the federal indictment on double jeopardy grounds. The assistant United States attorney stated that he had communicated with one state prosecutor regarding Mr. Williams' case, and that the state prosecutor agreed to dismiss Mr. Williams' state charges once he was indicted in federal court. In the interim, however, another state prosecutor, unaware of the impending federal proceedings, arranged Mr. Williams' plea. Although federal authorities knew of the state plea before filing the indictment, it was uncertain whether Mr. Williams would receive more than probation in state court. Federal authorities therefore decided to proceed with the prosecution.

The federal district court denied Mr. William's motion to dismiss, finding no evidence of collusion between the two sovereigns. The court admonished the federal prosecutor, however, for failing to better coordinate with state authorities. The district court further denied a motion to suppress evidence of the state court guilty plea.

## II.

Mr. Williams first argues the evidence was insufficient to show he carried a firearm "in relation to" a drug trafficking offense as required under 18 U.S.C. § 924(c)(1). The United States Supreme Court has held that the "in relation to" language "at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993). Whether a firearm facilitated a narcotics offense is a question for the jury. *See United States v. Reyes–Mercado*, 22 F.3d 363, 367 (1st Cir. 1994).

There is no dispute Mr. Williams was "carrying" the firearm at the time he arranged the buy and delivered the drugs to the officer. Mr. Williams claims he carried the firearm simply for personal protection, and that his carrying the firearm was entirely "incidental" to the crime. We find, however, that a reasonable jury could infer the gun served to facilitate the drug sale by protecting not only himself, but also the drugs and money during the sale. *United States v. Edwards*, 994 F.2d 417 (8th Cir.1993). In *Edwards*, firearms were seized from the defendant's home, along with a large amount of cash. No drugs were recovered in the home, however, nor was there evidence drug transactions took place there. On appeal, the court nevertheless found a sufficient nexus between the firearm and the drug transactions. As reasoned by the court, "[p]rotection of drug proceeds furthers a drug trafficking crime, and the use of a firearm to guard such proceeds therefore violates section 924(c)." *Id.* at 421. We also have affirmed numerous convictions under § 924(c) where weapons and drugs were located in different rooms within a residence, but were found to be readily available during the drug transactions. *United States v. Mejia*, 8 F.3d 3, 5 (8th Cir.1993); *United States v. Sykes*, 977 F.2d 1242, 1248 (8th Cir.1992); *United States v. Bennett*, 956 F.2d 1476, 1482–83 (8th Cir. 1992); *United States v. Townley*, 929 F.2d 365, 367 (8th Cir.1991); *United States v. Curry*, 911 F.2d 72, 79–80 (8th Cir.1990).

In the present case, Mr. Williams carried the firearm in the waistband of his pants at the time he executed a drug transaction. The weapon was clearly accessible if needed during the transaction. *See United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir.1990) ("It is sufficient to show that the defendant kept the firearms readily accessible to protect and facilitate the drug enterprise."). Whether Mr. Williams "profited" from the crime does not impact whether the firearm was carried "in relation to" the crime.

### III.

■ Mr. Williams next argues the federal prosecution violated the double jeopardy clause of the Fifth Amendment to the United States Constitution. "There is no double jeopardy bar against prosecution for the same offense in both federal and state courts." *United States v. Talley*, 16 F.3d 972, 974 (8th Cir.1994). "When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses.'" *Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985) (*citing United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922)).

■ The United States Supreme Court has recognized an exception to the dual sovereignty doctrine which creates a double jeopardy bar to later federal prosecutions if "'the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.'" *United States v. Garner*, 32 F.3d 1305, 1310 (8th Cir.1994) (*quoting Bartkus v. Illinois*, 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959)).

■ In the present case, Mr. Williams asserts that the federal prosecution was a sham for the state prosecution. We disagree. Although we share the district court's displeasure with the miscommunication between the state and federal prosecutors, we find no evidence of collusion. Rather, it appears the two sovereigns merely attempted to coordinate their respective prosecutions, but failed to keep the other fully apprised as each case proceeded. Both the Supreme Court, in *Bartkus*, and the Eighth Circuit, in *Talley*, specifically recognized that cooperation between state and federal authorities does not amount to unlawful collusion. *Bartkus v. Illinois*, 359 U.S. at 123, 79 S.Ct. at 678; *United States v. Talley*, 16 F.3d at 974.

Furthermore, although use of the state court guilty plea undoubtedly helped obtain the federal conviction, there is no evidence federal authorities deliberately procured the state plea or otherwise manipulated the state

process for the purpose of aiding the federal prosecution. On the contrary, the assistant United States attorney requested that state proceedings be placed on hold until the federal proceedings were completed. The fact this request was not honored is unfortunate, but does not suggest collusion.

### IV.

■ Lastly, Mr. Williams claims the district court erred in admitting evidence of his state court guilty plea. "A guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party opponent." *United States v. Holmes*, 794 F.2d 345, 349 (8th Cir.1986). Mr. Williams argues, however, that his guilty plea was involuntary due to the fact he was not informed it might be used against him in a subsequent federal proceeding.

■ Courts have held that in order to satisfy constitutional requirements, a defendant must be "fully aware of the direct consequences" of his plea. *United States v. Long*, 852 F.2d 975, 979 (7th Cir.1988). Use of the plea in a subsequent federal proceeding is not a direct consequence. *Id.* As explained by the *Long* court:

> [T]he state court has no direct role in federal prosecutions. The state and federal systems are separate and distinct, and the defendant need only be informed of the direct consequences he may face within the particular system. Therefore, the state court, even if knowledgeable about federal criminal law, need not undertake to inform the defendant of his potential federal criminal liability: the nature of the state sentence was unaffected by the federal prosecution and sentence.

*Id.; see also United States v. Maestas*, 941 F.2d 273, 279 (5th Cir.1991).

Several courts have held that a plea may not have been voluntary if the state prosecutors "actively hid" knowledge of the federal prosecution, or "colluded with federal officials." *United States v. Long*, 852 F.2d 975, 979 (7th Cir.1988) [2]; *see also United States v.*

---

**2.** Significantly, the *Long* court refused to recognize a rule which would require state prosecutors to "ascertain and inform state defendants of potential federal criminal charges as a prerequi-

*Rogers,* 906 F.2d 189, 192 (5th Cir.1990). Again, in the present case there is no evidence of collusion, nor is there evidence state prosecutors "actively hid" knowledge of the federal prosecution.

The decision of the district court is AFFIRMED.

site to the government using state-negotiated statements in a subsequent federal prosecution."

*United States v. Long,* 852 F.2d at 980.