UNITED STATES, Plaintiff,

v.

Calvin W. **RODGERS**, Defendant.

No. 01–CR–37.

United States District Court, E.D. Wisconsin.

Feb. 8, 2002.

**972**

Dean A. Strang, for Plaintiff.

Brian J. Resler, for Defendant.

### DECISION

ADELMAN, District Judge.

After being indicted for possession of cocaine base with intent to deliver and being a felon in possession of a firearm, defendant Calvin Rodgers moved to suppress his confession on the ground that it was induced by improper interrogation tactics and thus was involuntary. Magis-

trate Judge Aaron E. Goodstein conducted an evidentiary hearing on the motion and recommended that it be denied. Defendant objected to the recommendation. I reviewed the magistrate judge's recommendation de novo. 28 U.S.C. § 636(b)(1); *United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). I conducted an additional evidentiary hearing and, at the close of the hearing, orally adopted the magistrate judge's recommendation and denied the motion. I stated that I would follow the ruling with a written decision, which I now issue, discussing in detail the basis for denial of the motion.

### I. FACTS

On November 7, 2000, Milwaukee police found crack cocaine and a shotgun in a car owned by defendant's girlfriend, Yolanda Chappel. The next day they arrested defendant for possession of the drugs and the gun. The police booked defendant and then took him to the office of Detective Jeffrey Padovano for questioning. Padovano's office was an open air cubicle. Defendant wore street clothes and was not handcuffed.

Padovano first advised defendant of his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He then asked questions from a "pedigree sheet" about such matters as defendant's background, family, and criminal record. Defendant stated that he was not under the influence of drugs or alcohol and denied any history of mental illness. Padovano then questioned defendant about the drugs and the gun for approximately forty-five minutes. At one point defendant said that he was hungry, and Padovano gave him a candy bar and a soda.

Initially defendant denied knowledge of the contraband. Padovano told defendant that he would be charged with being a

felon in possession of a firearm and with possession of a controlled substance. He stated that because defendant was a felon the firearm charge was a serious one; however, he did not identify the specific penalties that defendant faced.

Padovano told defendant that it would be beneficial for him to answer questions because the district attorney and the court would be made aware of defendant's cooperation, and because cooperation "cleanses your soul." Padovano also expressed sympathy for defendant and suggested that he might well have been justified in selling drugs because it was difficult for him to find work and provide for his family without a high school diploma. Defendant nodded his head in apparent agreement.

The detective also told defendant that his fingerprints had been found on the firearm and the cocaine. This statement was false. Padovano testified that after he said this defendant's resistance dissolved, and defendant admitted that the contraband was his.

Defendant testified that the detective also told him that if he did not admit to having put the contraband in Chappel's car she could be arrested and possibly charged with the offense because the car was in her name. Defendant further testified that he believed that Chappel was pregnant, and that he confessed because he was afraid that, if arrested, she would miscarry. Padovano denied saying that Chappel could be arrested or charged and said that he merely asked defendant, "if you didn't put the gun and the crack in the car, who did?"

## II. DISCUSSION

Defendant argues that his confession was involuntary because the detective induced it through psychologically coercive interrogation tactics. Defendant objects to (1) the detective's statement that it would be beneficial for him to cooperate; (2) the "threat" to investigate or arrest defendant's girlfriend; (3) the lie that defendant's fingerprints had been found on the contraband; and (4) the detective's posing as a "false friend" by sympathizing with defendant and suggesting that he might be justified in selling drugs because of the difficult circumstances of his life.

## A. Voluntariness

■■■ "[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (citation omitted). "A confession is voluntary if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir.1997). The United States bears the burden of proving voluntariness by a preponderance of the evidence. *United States v. Carter*, 910 F.2d 1524, 1529 (7th Cir.1990).

■■ Among the factors relevant to the voluntariness inquiry are the nature, location, and duration of the questioning; the defendant's age, intelligence, education, and physical and mental condition, and his experience with the criminal justice system; whether the defendant was subjected to physical harm, including the deprivation of food, drink, or sleep; whether he was advised of his constitutional rights; and whether he was under the influence of drugs or alcohol. *See Watson*, 122 F.3d at 453; *Smith v. Duckworth*, 910 F.2d 1492, 1496 (7th Cir.1990). Notwithstanding the presence or absence of the above factors,

however, a court may not find that a confession was involuntary unless the police used some type of coercive tactic. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

■ A confession obtained by violence or by a credible threat of violence renders it involuntary. *Holland v. McGinnis,* 963 F.2d 1044, 1050 (7th Cir.1992); *see also Brown v. Mississippi,* 297 U.S. 278, 286–87, 56 S.Ct. 461, 80 L.Ed. 682 (1936) (indicating that a confession extorted through brutality and violence violated due process); *Smith,* 910 F.2d at 1497 (indicating that a confession was involuntary where officers threatened to return defendant to cell containing individuals he had implicated).

Determining whether police conduct that does not involve violence or threats of violence is unconstitutional is more difficult. However, police coercion can be mental as well as physical, and "the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

There are a number of different interrogation tactics that may be psychologically coercive, rendering a confession involuntary. These include (1) threats of punishment and promises of leniency; (2) threats of adverse consequences to a suspect's friend or loved one; (3) misrepresentation of the evidence against a suspect; and (4) the so-called "false friend" tactic.[1] *See Spano v. New York,* 360 U.S. 315, 323, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Welsh S. White, *Restraining Pernicious Interrogation Practices,* 99 Mich. L.Rev. 1211, 1233–46 (2001) [hereinafter *Interrogation* ]; *see also* Margaret L. Paris, *Faults, Fallacies & the Future of Our Criminal Justice System: Trusts, Lies & Interrogation,* 3 Va. J. Soc. Pol'y & L. 3, 21 (1995).

The propriety and effect of each of these tactics in a given case should be assessed as part of the totality of the circumstances.

I will briefly discuss these tactics and the relevant factors in determining whether they have been used in an unconstitutionally coercive manner. In considering their use, I balance the needs of law enforcement with the recognition that " 'ours is an accusatorial and not an inquisitorial system.' " *Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (quoting *Rogers v. Richmond,* 365 U.S. 534, 541, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)). I also take into account the sources of our aversion to involuntary confessions: (1) an abhorrence of convictions based on unreliable confessions, (2) a belief that police practices used to obtain confessions should not impose an intolerable degree of pressure on suspects so as to subjugate free will, and (3) a belief that police practices must comport with our standards of fundamental fairness. *See* Welsh S. White, *Police Trickery in Inducing Confessions,* 127 U. Pa. L.Rev. 581, 593–94 (1979) [hereinafter *Police Trickery* ] (citing *Miranda,* 384 U.S. at 507, 86 S.Ct. 1602 (Harlan, J., dissenting)).

### 1. Threats and Promises

While it was once true that a confession induced by "any direct or implied promises, however slight," violated the Constitution, *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 42 L.Ed. 568 (1897), this is no longer the rule. *Arizona v. Fulminante,* 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Rather, courts must analyze alleged threats or promises as part of the totality of the circumstances. *See id.* at 285–86, 111 S.Ct. 1246.

If the inducement is slight, such as a promise by a police officer to note a sus-

---

1. Defendant alleges that the detective used a variation of each of these tactics.

pect's cooperation, a false confession is unlikely to result. *Interrogation, supra,* at 1234–35. However, where an officer promises a suspect that if he cooperates with the interrogator he will not be charged at all or will receive leniency, the likelihood of a false confession is much greater. *Id.* at 1235 (citing Richard A. Leo & Richard J. Ofshe, *The Consequences of False Confessions: Deprivations of Liberty and Miscarriages of Justice in the Age of Psychological Interrogation,* 88 J.Crim. L. & Criminology 429, 470–71, 475–76 (1998) [hereinafter *Consequences* ]).

In *United States v. Rutledge,* 900 F.2d 1127, 1130 (7th Cir.1990), the court recognized this distinction, noting that if an officer promises a suspect that if he tells police everything he knows nothing he says will be used against him, the suspect would have "a strong argument that any ensuing confession had been extracted by fraud and was involuntary." However, if the officer simply promises to inform prosecutors of a suspect's cooperation, or advises a suspect that cooperation is often helpful to an accused, "there could be no serious argument that he had been coerced to confess." *Id.; see also United States v. Long,* 852 F.2d 975, 978 (7th Cir.1988) ("[L]eading the defendant to believe that he or she will receive lenient treatment when this is quite unlikely is improper, whereas, making a promise to bring the defendant's cooperation to the attention of the prosecutor or to seek leniency, without more, typically is not.").

Similarly, a generic, albeit vaguely threatening statement such as, "It would

be better for you to talk to us[,][o]therwise we will take you in," *United States v. Mizyed,* 927 F.2d 979, 980 (7th Cir.1991), is unlikely to overbear the will of a suspect and produce a false confession. However, threatening a suspect that if she maintains her innocence she will die in the electric chair, *see Consequences, supra,* at 475–76, could easily to produce a false confession. Indeed, this comes close to a threat of violence.

A persuasive case can be made for prohibiting police statements or conduct that are likely to cause a suspect to believe that he will suffer serious adverse consequences if he does not cooperate or will receive substantial leniency if he does. *Interrogation, supra,* at 1236. When threats or promises of this type are made, the resulting confession will almost always be involuntary. *See United States v. Veilleux,* 846 F.Supp. 149, 154–55 (D.N.H. 1994) (indicating that a confession was involuntary when defendant was told that nothing he said would be used against him); *see also United States v. Kontny,* 238 F.3d 815, 818 (7th Cir.) (indicating that an investigator's promise that a suspect would not be prosecuted if he played ball could be the kind of false promise that would overcome the suspect's free will), *cert. denied,* 532 U.S. 1022, 121 S.Ct. 1964, 149 L.Ed.2d 758 (2001); *United States v. Walton,* 10 F.3d 1024, 1029–30 (3d Cir. 1993) (indicating that an agent's promise that defendant could speak "off the cuff," by which agent intended that defendant's statements would not be used against him, rendered confession involuntary).[2]

---

**2.** Often distinguishable are cases in which an officer innocently, but mistakenly, advises a defendant that his cooperation would be beneficial, *see Rutledge,* 900 F.2d at 1132 (finding that defendant's confession following officer's statement that cooperation would be helpful was voluntary despite fact that confession revealed defendant had dealt a substantially

larger quantity of drugs than government suspected and thus quintupled his sentence under the guidelines), or where the officer fails to advise the suspect of some collateral consequence of his confession, *Pharr v. Gudmanson,* 951 F.2d 117, 120 (7th Cir.1991) (finding that defendant's confession to Village of Fox Point, Wisconsin officer following promise

■ Thus, a court should evaluate threats and promises along a continuum. At one end lie threats of serious adverse consequences and promises of substantial leniency and at the other are suggestions that cooperation is a good thing and silence unhelpful. The closer an officer's statement comes to the former, the more likely the resulting confession is involuntary.

### 2. Threats of Adverse Consequences to a Friend or Loved One

The tactic of inducing a suspect to talk by threatening adverse consequences to a friend or loved one is a particularly pernicious technique. In *Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), the Supreme Court held that when police told a defendant that if she did not talk her children would be taken away and state financial assistance to them would be cut off her statement was involuntary. In *Spano,* 360 U.S. at 323, 79 S.Ct. 1202, the Court found a confession involuntary when a police trainee, who was a childhood friend of the defendant, told the defendant that he could lose his job and his family would suffer unless defendant confessed. *See also Rogers,* 365 U.S. at 535–36, 81 S.Ct. 735 (discussing police threat to take defendant's wife, who suffered from arthritis, into custody).

A strong argument can be made that falsely informing a suspect that his failure to confess will cause a friend or loved one to suffer serious adverse consequences has a substantial potential for precipitating a false confession and should be prohibited. *See Interrogation, supra,* at 1241. A sus-

pect confronted with such a misrepresentation might easily be led to believe that protecting a friend or loved one from imminent harm was more important than protecting himself from the consequences of a confession. However, a police officer's suggestion of possible adverse consequences to a suspect's friend or loved one is not always improper. Sometimes such a suggestion may be an honest statement of a possible outcome. If, for example, police find drugs in a common area of a home shared by a husband and wife, and, in the absence of an admission from one spouse, could properly seek charges against both, it would be entirely proper for police to disclose this information during an interrogation.

■ Thus, when considering whether threats of adverse consequences to a suspect's friend or loved one constitute unconstitutional police coercion, a variety of factors are likely to be relevant: (1) whether the officers actually intended to take action against the friend or loved one or whether the threat constituted a misrepresentation; (2) whether there was a legitimate basis for taking action against the friend or loved one; (3) the severity of the threatened action; and (4) whether the friend or loved one suffered from an infirmity that would render him or her particularly vulnerable to official action.

### 3. Misrepresentation of Evidence

The tactic of lying to a suspect about the evidence the police have has not been widely condemned by courts. In *Frazier v. Cupp,* 394 U.S. 731, 737–39, 89 S.Ct.

---

that officer would issue a non-criminal citation was not involuntary even though Ozaukee County, Wisconsin later issued criminal charges using confession as evidence); *Long,* 852 F.2d at 978–79 (finding that defendant's confession given after he worked out a deal with state officials was not involuntary even though federal government later prosecuted

him based on confession). *But see Walton,* 10 F.3d at 1029–30 (indicating that an agent's honest promise that defendant could speak "off the cuff," by which agent intended that defendant's statements would not be used against him, rendered confession involuntary).

1420, 22 L.Ed.2d 684 (1969), the Supreme Court found a confession voluntary despite the officer's having falsely told the suspect during the interrogation that his associate had confessed to the crime. The Court held that, although the misrepresentation was relevant in evaluating the totality of the circumstances, it was not in itself sufficient to render the confession involuntary. *Id.* at 739, 89 S.Ct. 1420.

Following *Frazier* most courts held that police lies about evidence, without more, do not render a confession involuntary. *See, e.g., Lucero v. Kerby,* 133 F.3d 1299, 1311 (10th Cir.1998) (false statement that defendant's fingerprints were found at the crime scene did not render confession involuntary); *Ledbetter v. Edwards,* 35 F.3d 1062, 1066, 1070 (6th Cir.1994) (false statements that defendant's fingerprints had been found at crime scene and that the victim and two witnesses had identified him did not render confession involuntary); *Holland,* 963 F.2d at 1051 (false statement that witness had seen defendant's van at crime scene did not render confession involuntary); *United States v. Velasquez,* 885 F.2d 1076, 1088 (3d Cir.1989) (false statement that co-actor had made statement against defendant and was being set free did not render confession involuntary); *State v. Cobb,* 115 Ariz. 484, 566 P.2d 285, 291 (1977) (police lie that defendant's fingerprints had been found in victims' home did not render confession involuntary). *But cf. State v. Rettenberger,* 984 P.2d 1009, 1015 (Utah 1999) (repeated false statements about the evidence, coupled with other factors, rendered confession involuntary).

The rationale for permitting misrepresentations about evidence is that "a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary." *Holland,* 963 F.2d at 1051. Courts have distinguished between lies that arguably would cause a suspect to reflect on "his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime," and lies interjecting "extrinsic considerations" into the suspect's deliberation. *Id.* Lies involving extrinsic considerations include those causing a suspect to reach an erroneous conclusion about the punishment he will incur if he does not cooperate, misrepresentations of the consequences others will face if the suspect does not talk, and lies that undermine the *Miranda* warnings or otherwise convey the message that the suspect "must confess at that moment or forfeit forever any future benefit that he might derive from cooperating." *United States v. Anderson,* 929 F.2d 96, 100 (2d Cir.1991).

Notwithstanding that courts have been tolerant of police lies about evidence, any form of police trickery in the interrogation room merits close judicial scrutiny. Moreover, lies about evidence can sometimes lead to unreliable confessions. Repeated false statements designed to induce a suspect to believe that the evidence against him is overwhelming and that his conviction is a foregone conclusion may cause him to confess because he believes "continued resistance is futile." *Interrogation, supra,* at 1243.

For example, in *Rettenberger,* 984 P.2d at 1015, officers, who had virtually no evidence of the defendant's guilt, repeatedly confronted the eighteen year old suspect with false statements about the testimonial and physical evidence against him. The court stated:

> Chief among the many problems with such duplicity is that it may·lead wrongly accused suspects "to see themselves as either being set up or railroaded." Richard J. Ofshe & Richard A. Leo, *The Decision to Confess Falsely: Rational Choice and Irrational Action,* 74 Denv.

U.L.Rev. 979, 1044 (1997) [hereinafter *Decision to Confess*]. Such a suspect may well determine that "continued resistance is futile (because the police have evidence that will convict him despite his innocence)." Welsh S. White, *What is an Involuntary Confession Now?*, 50 Rutgers L.Rev.2001, 2053 (1998). Such a suspect may also conclude that, given the futility of resistance, it is most prudent to cooperate and even confess falsely in order to get leniency.

*Id.* The court further noted that a suspect will be more likely to confess when faced with assertions that the authorities have obtained "scientific" evidence against him because " '[b]oth the guilty and the innocent have a harder time explaining away evidence that is allegedly derived from scientific technologies.' " *Id.* at 1016 (alteration in original) (quoting *Decision to Confess, supra,* at 1023).

It is important to note in this regard that *Frazier* involved a false statement that the defendant's associate had confessed, not a lie about scientific or physical evidence. *Frazier* is not a license for police officers to lie on any subject they choose. In assessing the totality of the circumstances, police misrepresentations about different kinds of evidence may be accorded different weight.

Further, a lie may become less acceptable if it is repeated by a number of police officers. *Police Trickery, supra,* at 624. The Seventh Circuit recognizes "that certain ancillary practices—such as browbeating a suspect with a misrepresentation over an extended period of time—could transmute this tactic into a more coercive one." *Holland,* 963 F.2d at 1052. Where officers unanimously profess to believe in a suspect's guilt he may " 'yield to the majority' " even if it " 'requires misreporting

what he sees or believes.' " *Police Trickery, supra,* at 624 (quoting Edwin D. Driver, *Confessions and the Social Psychology of Coercion,* 82 Harv. L.Rev. 42, 51–52 (1968)). The possibility of a false confession is further compounded if the suspect is young and impressionable, and would be forced to contradict the assurances of authority figures in order to resist. *Id.*

### 4. False Friend

In *Spano,* 360 U.S. at 323, 79 S.Ct. 1202, the Court used the term "false friend" to describe a police trainee's trading on a childhood friendship to induce a suspect to confess. The term is now used to describe an interrogating officer's tactic of assuming the role of friendly advisor, father figure, or religious counselor to a suspect. *Police Trickery, supra,* at 615. A leading treatise on police interrogation describes how a suspect's resistance will likely be decreased if the officer " 'establish[es] a friendly and trusting attitude on the part of the suspect.' " *Id.* at 614 (quoting Robert F. Royal & Stephen R. Schutt, *The Gentle Art of Interviewing and Interrogation: A Professional Manual and Guide* 61–62 (1976)).

While courts have not generally condemned the false friend tactic, *see Rettenberger,* 984 P.2d at 1017, the tactic nevertheless has the potential for abuse, and, if certain factors are present, could induce a false confession. Such factors include: (1) a suspect's youth, especially if he appears eager to please an older officer whom he may view as a father figure; (2) a suspect's mental condition, especially if it makes him submissive, susceptible to suggestion, or anxious for approval from others;[3] (3) a suspect's religious beliefs, especially if they might render him susceptible to reli-

---

**3.** Here, a court should carefully evaluate whether the suspect is confessing in his own words or whether he is merely parroting in-

formation revealed by the officers. *See Police Trickery, supra,* at 616.

gious appeals by police; (4) the extent to which an officer's friendliness may be regarded as a promise of leniency if the defendant confesses; and (5) whether the officer's statements negate the effects of the *Miranda* warnings.[4] *See Rettenberger*, 984 P.2d at 1017; *Police Trickery*, *supra*, at 615–17.

## B. Application of Foregoing Principles to Interrogation of Defendant

■ In light of the foregoing discussion I now assess whether Detective Padovano's interrogation was psychologically coercive so as to render defendant's confession involuntary. Although the officer used a variation of each of the tactics discussed above, considering the totality of circumstances, particularly defendant's personal characteristics and the relatively benign character of the questioning, I conclude that the interrogation was not unconstitutionally coercive.

I first note that defendant's background did not render him particularly vulnerable to psychological ploys. Defendant was twenty-two and, although he had not completed high school, he could read and write and express himself clearly. He was not physically or mentally impaired and was not under the influence of drugs or alcohol. Further, he was not new to the criminal justice system, having been arrested at least twice before and having served time in prison.

Second, the circumstances of the questioning were unobjectionable. The detective advised defendant of his *Miranda* rights and made no subsequent statements that could reasonably be construed as negating the effect of such warnings. He interrogated defendant in an open-air office, not a jail cell or other enclosed area. Defendant was not shackled, handcuffed, or otherwise restrained. The officer was polite throughout the questioning and did not raise his voice. He allowed defendant to eat and drink. Only one officer participated in the interrogation, and the actual questioning lasted only forty-five minutes.

Nevertheless, Detective Padovano used several interrogation tactics, which as discussed, are potentially coercive. First, he advised defendant that cooperation would be beneficial to him. However, this statement did not rise to the level of an improper promise. The detective did not promise defendant that his cooperation would result in leniency, nor did he threaten defendant that his failure to cooperate would cause him to suffer serious adverse consequences. The detective merely told defendant that his cooperation would be brought to the attention of the prosecutor and the court. Such a statement that cooperation would be beneficial is unlikely to induce an unreliable confession. Further, the detective's statement that cooperation cleanses the soul was also relatively innocuous and unlikely to elicit a false confession. *See Long*, 852 F.2d at 978 (indicating that a promise to bring defendant's cooperation to attention of the prosecutor, without more, is typically insufficient to demonstrate involuntariness).

The detective's second potentially coercive tactic was his statement regarding the possible consequences to defendant's girlfriend if defendant failed to cooperate. Defendant and Detective Padovano disagreed about what the detective actually said. Defendant testified that Padovano told him that his girlfriend could be arrested and possibly charged with possession of contraband because the car in which it was found was in her name. The detective testified that he merely asked defendant

---

**4.** The purpose of the warnings is to "make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest." *Miranda*, 384 U.S. at 469, 86 S.Ct. 1602.

who could be responsible for the contraband if the defendant was not.

It is unnecessary for me to determine whose version of the statement is more credible because neither constitutes psychological coercion. As previously discussed, not all statements regarding possible adverse consequences to a friend or loved one of a suspect are improper. Here, Padovano did not make a definite threat of any sort. At most, he suggested that because Chappel owned the car she might be exposed to liability. This suggestion was not without foundation. If defendant was innocent it would have been reasonable for the police to continue to investigate the crime and to explore whether Chappel was involved. Thus, the detective's statement did not override defendant's will or make his confession unreliable.

The third tactic was the detective's lie that defendant's fingerprints were found on the contraband; according to the detective this statement precipitated defendant's confession. However, according to the Seventh Circuit, "a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary." *Holland*, 963 F.2d at 1051. Defendant had been questioned before and the circumstances of this interrogation were relatively benign. Defendant was not browbeaten with repeated assurance of his guilt by multiple officers. Thus, the lie was unlikely to produce an unreliable confession. *See Lucero*, 133 F.3d at 1311 (holding that an officer's lie that defendant's fingerprints were found at the scene did not without more render confession involuntary); *Ledbetter*, 35 F.3d at 1070 (same).

Finally, the "false friend" tactic, whereby the detective expressed sympathy for defendant and offered a justification for selling drugs, did not cross the constitutional line. "Expressions of sympathy by an officer are not coercive." *United States v. Rojas–Martinez*, 968 F.2d 415, 418 (5th Cir.1992). Further, defendant was not particularly vulnerable to this treatment by reason of age, background, or mental condition. Padovano did not promise to assist defendant if defendant confessed nor did his pose undermine the effect of the *Miranda* warnings.

## III. CONCLUSION

As the Seventh Circuit has stated, police are not "a fiduciary of the suspect." *Rutledge*, 900 F.2d at 1131. Nevertheless, courts must insure that police interrogation tactics do not exert unreasonable pressure on suspects, are consistent with a civilized system of justice, and do not produce unreliable confessions.

The tactics used in the present case all have the potential to be coercive, but they did not cross the constitutional line in this case. There is no evidence that the police overcame defendant's free will or that his confession was not the product of rational intellect.

For the foregoing reasons, I adopted the magistrate judge's recommendation to deny defendant's motion to suppress and denied the motion.